## In re SILVER WHEEL FREIGHTLINES, INC., Debtor.

### Bankruptcy No. 382–03538–S7.

United States Bankruptcy Court,
D. Oregon.

Dec. 20, 1985.

Bradley O. Baker, Portland, Or., for trustee.

Ronald T. Adams, Portland, Or., and Ann-Marie Gare, San Francisco, Cal., for Joint Bd. of Trustees of the Western Conference of Teamsters Trust Fund.

FINDINGS DENYING PRIORITY STATUS TO CLAIM NO. 1020 OF JOINT BOARD OF TRUSTEES OF WESTERN CONFERENCE OF TEAMSTERS TRUST FUND

DONAL D. SULLIVAN, Bankruptcy Judge.

The Joint Board of Trustees of the Western Conference of Teamsters Trust Fund ("Board") filed a claim for $1,531,582.11 asserting administrative priority under 11 U.S.C. § 507(a)(1) for withdrawal liability imposed by 29 U.S.C. § 1381(a). The Board based liability on the unfunded vested pension benefits which the debtor must pay as a result of the post-chapter 11 termination by the debtor of its participation in a multi-employer pension fund required by a collective bargaining agreement. The Board asserted various legal theories, which are mostly based upon the fact that the debtor

operated in chapter 11 for about nine months before the debtor ceased covered operations entirely and the Court converted the case. The trustee objected to the administrative priority status claimed by the Board. The priority sought by the Board involves pure withdrawal liability. There is no issue with respect to the priority of any claim for post-filing non-withdrawal pension plan contribution liability. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The Board is not entitled on either the facts or the law to administrative priority for the withdrawal liability imposed by 29 U.S.C. § 1381.

The debtor, who at one time was probably the largest LTL scheduled common carrier in the state of Oregon, filed chapter 11 on November 4, 1982. Shortly after filing, the debtor-in-possession moved to reduce wages, suspend pension trust contribution payments, and to reject its union contract. Northwest Administrators, Inc., acting on behalf of the unions, the pension trust, and the health and welfare trust, resisted. After finding that the debtor's short-term survival depended upon immediate relief, the Court granted most of the debtor-in-possession's requests but refused to allow rejection of the union contract prior to the formulation of a plan of reorganization. On July 1, 1983, after a strike, some alleged violence, and a failing operation, the Court converted the case. Shortly thereafter, the debtor permanently ceased all covered operations under its pension plan. Until then, no one had moved to approve or to determine the priority of the debtor's withdrawal liability. There is now about $1,000,000 in the estate, most of which is claimed by a secured creditor in pending litigation and which, in any event, will be insufficient to pay all administrative chapter 11 claims, particularly if the priority claimed by the Board is allowed. Nothing will be paid to 507(a)(3) priority wage claims which are substantial, or to 507(a)(4) claims for non-withdrawal pension fund contributions. In fact, it is doubtful whether all administrative wage claims can be paid.

All of the Board's arguments for priority must be rejected. Basically, the Board argued that the debtor-in-possession triggered the enormous administrative priority claimed under 29 U.S.C. § 1383(a) by continuing to operate after filing chapter 11, failing, and then permanently ceasing operations. This, the Board asserted, entitles its claim to administrative priority in much the same fashion as priority is given for post-filing non-withdrawal pension plan contributions under *Wyle v. Pacific Maritime Association (In re Pacific Far East Line)*, 713 F.2d 476 (9th Cir.1983) (hereafter *"PFEL"*); severance pay under *Lines v. System Board of Adjustment No. 94 Brotherhood of Railway, Airline & Steamship Clerks (In re Health Maintenance Foundation)*, 680 F.2d 619 (9th Cir. 1982); or damages for negligence under *Reading v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). In addition, the Board argued that priority should be allowed because the debtor benefitted from the post-filing operation and because there is an implied congressional policy supporting priority.

As a fact, the liability in this case arose prior to filing chapter 11 but payment was accelerated by the cessation of covered operations. The pension plan involved here is a "defined benefit" plan rather than a "defined contribution" plan, *see* 29 U.S.C. § 1002(34) & (35), under which employees' pensions are calculated on factors other than the contributions made on their behalf to the plan. As a result, before filing chapter 11 the debtor contributed an unfunded liability to the plan for vested future pension benefits which became payable under 42 U.S.C. § 1383(a)(2) on an accelerated basis when the debtor permanently ceased all covered operations. But for withdrawal, the unfunded liability would have been amortized over the years through regular contribution payments to the Board. *See Nachman Corp. v. Pension Benefit Guaranty Corp. (In re Nachman Corp.)*, 592 F.2d 947, 950 (7th Cir. 1979), *aff'd* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). The rights of benefi-

ciaries, which is the origin of the debtor's withdrawal liability, for the most part vested prior to filing chapter 11.

Based upon the definition of a "claim" in 11 U.S.C. § 101(4), the Board at the time of filing chapter 11 had an unliquidated and unmatured right to accelerate payment when the debtor permanently shut down. This right is a pre-petition right which cannot logically be analogized to the "payment in lieu of notice of termination" rationale adopted in the severance pay cases, *see Health Maintenance Foundation*, 680 F.2d at 621 and cases there cited; to post-filing negligence of a trustee, *Reading*, 391 U.S. at 471, 88 S.Ct. at 1759; *Securities and Exchange Commission v. United Financial Group, Inc.*, 576 F.2d 217, 222–23 & n. 13 (9th Cir.1978); or to principal pension contribution payments granted priority under case law when labor harmony is no longer a consideration, *see PFEL*, 713 F.2d 476 and cases there cited; *Hospital Welfare Fund v. Baptist Medical Center of New York, Inc. (In re Baptist New York, Inc.)*, 52 B.R. 417 (E.D.N.Y.1985).

■ The debtor's cessation of business shortly after conversion to chapter 7 removed any contingency and required liquidation of the claim under 29 U.S.C. § 1381(a). Under 11 U.S.C. § 348(d), however, the mere fact that this occurred post-petition is not enough to elevate the claim to an administrative expense. *In re Blue Ribbon Delivery Service, Inc.*, 31 B.R. 292, 293 (Bankr.W.D.Ky.1983). Rather, the claim must also arise from a benefit conferred upon the estate. *Health Maintenance Foundation, supra*, 680 F.2d at 621, *citing Cramer v. Mammoth Mart (In re Mammoth Mart)*, 536 F.2d 950, 954 (1st Cir.1976). Moreover, the debtor could not wittingly or unwittingly elevate pre-petition debt to post-petition administrative priority without an order of the Court after notice and hearing. *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092, 1097–99 (2d Cir. 1979). Although both Title 29 and the Bankruptcy Code deal with priority of an employer's liability to a pension fund, nothing in either act grants administrative priority to withdrawal liability.

■ No one can seriously argue that during the eight months of chapter 11 operation this debtor received benefits in excess of its post-petition contribution liability which approach the $1,500,000 priority withdrawal claim asserted by the Board. Similarly, no one can reasonably argue, as in *PFEL*, that labor harmony is a factor in allowing priority over wage claims when the business has been closed. In addition, it cannot be maintained that the assumption of such liability would be an ordinary course of business transaction authorized under 11 U.S.C. § 363(b), 364(a) or any other statute without Court approval after notice. In fact, just as the debtor did not adopt the contract or agree to anything with respect to withdrawal liability, the Court did not knowingly approve any post-filing transaction or conduct which would qualify under 11 U.S.C. § 549(a) as authorizing administrative priority for withdrawal liability. As a result of the conversion and the trustee's failure to assume, the union contract, itself, was rejected by operation of law under 11 U.S.C. § 365(d)(1) and (g).

Acceptance of the Board's premise that withdrawal liability is statutory, rather than contractual, does not lead to a different result. *See Debreceni v. Healthco— D.G. Stoughton Co.*, 579 F.Supp. 296, 297 (D.Mass.1984). The Board's argument only begs the question. Under 11 U.S.C. § 348(d) as well as §§ 365 and 502(g), the fundamental test remains whether a claim arising post-petition qualifies as a 507(a)(1) administrative expense, based on its occurrence post-petition and the derivative benefit to the estate. *Mammoth Mart*, 536 F.2d at 954. The latter is absent here.

The Board's congressional intent argument does not compel a different result either. In expressly giving preferential treatment to certain types of pension contribution and withdrawal liability, by logical inference Congress rejected administrative priority. *Compare* 11 U.S.C. § 507(a)(4) *with* 29 U.S.C. §§ 1368(c)(2) & 1413(e)(2). Congress assigned fourth priority to certain types of pension contribution

liability and purported to give tax lien and priority status to certain types of withdrawal liability. Notably, Congress limited the amount eligible for the 507(a)(4) priority, and narrowly drew the lien given under 29 U.S.C. §§ 1368 and 1413(e)(2). Thus, legislative history, if anything, points to a rejection by Congress of the sort of blanket first priority sought in the present case and reflects a determination that withdrawal liability should compete unfavorably with wage claims and non-withdrawal pension contribution claims. Tradition and statutory policy prohibits use of administrative priority to allow pre-petition debt to swallow the statutory priorities of 11 U.S.C. § 507(a). *In re Cott Corp.*, 47 B.R. 487, 491 (Bankr.D.Conn.1984) (hereafter "*Cott II*").

In conclusion, the Court holds that under either 11 U.S.C. §§ 365(g) and 502(g) or 11 U.S.C. § 348(d), the Board's claim for withdrawal liability is, in its entirety, a pre-petition, unsecured claim. In this regard, *In re Kessler*, 23 B.R. 722 (Bankr.S.D.N.Y. 1984) rather than *Cott* II, *supra*, governs because that case best satisfies the test for administrative priority in *Mammoth Mart*, 536 F.2d at 954.