*406
 
 OPINION
 

 FARRIS, Circuit Judge.
 

 The pension plan of Industrial and Allied Employees Union Local No. 73 appeals the district court’s reduction of an arbitrator’s award. We hold that CPT Holdings, Inc. had no liability within the meaning of the Bankruptcy code prior to Hupp’s actual withdrawal from the plan. We reverse and remand for reinstatement of the arbitrator’s award.
 

 FACTS
 

 Prior to bankruptcy proceedings, Hupp and the Industrial & Allied Employees Union Local No. 73 were parties to a Collective Bargaining Agreement under which Hupp made contributions to the Plan. Hupp filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq, in November of 1991 and continued operations as a debtor-in-possession during bankruptcy proceedings.
 

 In January 1993, the Bankruptcy Court confirmed Hupp’s reorganization plan. Under the reorganization plan, Hupp assumed the existing Collective Bargaining Agreement and CPT made a $2 million contribution to Hupp in exchange for 80.1% of Hupp’s newly issued stock.
 

 In February 1993, Hupp entered into a new labor agreement with Local No. 73 that required Hupp to continue making contributions to the Plan. Hupp did so until October 1994, when CPT and Huntington National Bank, Hupp’s senior creditor, foreclosed on their collateral and liquidated Hupp. As a result, Hupp ceased contributions and “completely withdrew”
 
 [1]
 
 from the plan.
 

 In December 1994, Hupp’s creditor moved the Bankruptcy Court for entry of a final decree closing Hupp’s estate. The Plan filed a partial objection, which was denied because the final decree reserved “rights, if any, in favor of Local 73 to enforce payment by the debtor.”
 

 In January 1995, the Pension Plan demanded payment of withdrawal liability from CPT in the amount of $930,087. CPT timely requested, pursuant to § 4219(b)(2) of ERISA, that the Plan review and reconsider the assessment. The Plan reduced the assessment by $60,847, reflecting a reduction in pre-demand interest. CPT then submitted a demand for arbitration, as required in all disputes between an employer and a mul-tiemployer pension plan regarding withdrawal liability. 29 U.S.C. § 1401(a)
 

 The arbitrator sustained the Plan’s assessment of $869,840. CPT appealed the decision to the district court. The district court granted CPT’s motion for summary judgment in part, holding the Plan had a “contingent claim,” as defined in the Bankruptcy Code, against Hupp for withdrawal liability prior to actual withdrawal. Hupp’s withdrawal liability therefore constituted a debt, and confirmation of bankruptcy proceedings acted to discharge that debt. Therefore, CPT could be liable only for liability reflecting post-confirmation membership in the Plan; liability that CPT does not dispute.
 

 The Plan argues that characterizing withdrawal liability as a “claim” prior to withdrawal was an improper legal conclusion and will subvert the goals of ERISA, as amended by MPPAA, by allowing employers to withdraw from plans without paying their proportionate share of vested benefits.
 

 The Plan also argues that Hupp’s assumption of the CBA as part of reorganization, requiring it to make contributions to the Plan, acted as an assumption of withdrawal liability as well.
 

 WHETHER A CLAIM EXISTS PRIOR TO WITHDRAWAL
 

 The pivotal issue is the time at which the Plan had a “claim” against Hupp for withdrawal liability under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1453 [“MPPAA”]. Hupp’s Chapter 11 reorganization plan was confirmed some eighteen
 
 *407
 
 months prior to its withdrawal from the Plan. Unless either the reorganization plan or the confirmation order provide otherwise, confirmation “discharges a debtor from any debt that arose before the date of such confirmation.” 11 U.S.C. § 1141(d)(1)(A). A “debt” is defined as liability on a claim. 11 U.S.C. § 101(12). The definitions of claim and debt are therefore coextensive.
 
 Penn. Dept. of Public Welfare v. Davenport,
 
 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). If the Plan had a “claim” for withdrawal liability at confirmation, that claim was discharged (unless the confirmation order provided otherwise), and CPT would only be subject to withdrawal liability based on its postconfirmation contribution history.
 

 The parties agree, at least implicitly, that a “claim” for withdrawal liability exists where an employer withdraws prior to confirmation of a Chapter 11 reorganization plan, and liability would thus be discharged upon actual confirmation. They debate whether a “claim” exists at confirmation where an employer assumes a plan’s funding obligations during Chapter 11 proceedings, but does not withdraw until well after confirmation of the reorganization plan.
 

 Although CPT and Hupp were admittedly members of a commonly controlled group after confirmation, and such groups are considered to be a single employer with joint and several liability, 29 U.S.C. § 1301(b)(1);
 
 Teamsters Joint Council No. 83 v. Centra, Inc.,
 
 947 F.2d 115, 120 (4th Cir.1991), the fact that they were not commonly controlled prior to confirmation means that Hupp’s liability was discharged, if at all, prior to the existence of a commonly controlled group. No liability for pre-confirmation activities could thus have been passed to CPT.
 
 Compare Teamsters Joint Council No. 83 v. Centra,
 
 947 F.2d 115, 120 (4th Cir.1991) (holding a control group member liable for withdrawal liability because that entity was a member
 
 prior to
 
 confirmation as well as after).
 

 Withdrawal liability is a product of the MPPAA, 29 U.S.C. §§ 1381-1453, which amended ERISA to increase the financial liability of employers who withdraw from underfunded plans.
 
 In re United Merchants and Manufacturers,
 
 166 B.R. 234, 235-36 (Bkrtcy.D.Del.1994). Prior to MPPAA, a withdrawing employer was not necessarily required to pay its share of unfunded, vested benefits.
 
 Milwaukee Brewery Workers’ Pension Plan v. Jos. Schlitz Brewing Co.,
 
 513 U.S. 414, 416-17, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995). If the plan did not become insolvent in the five years following withdrawal, the withdrawing employer would avoid all liability. 29 U.S.C. § 1364. The MPPAA changed ERISA to require “withdrawing employers to pay their share of unfunded, vested benefits regardless of the plan’s future success.” An employer’s withdrawal liability is its ‘proportionate share of the plan’s unfunded vested benefits’, that is, the difference between the present value of vested benefits (benefits that are currently being paid to retirees and that will be paid in the future to covered employees who have already completed some specified period of service, 29 U.S.C. § 1053) “and the current value of the plan’s assets.” 29 U.S.C. §§ 1381, 1391.
 
 Concrete Pipe & Products v. Construction Laborers Pension Trust,
 
 508 U.S. 602, 608, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).
 

 Withdrawal liability differs from a failure to satisfy monthly or annual funding requirements.
 
 United Merchants & Manufacturers,
 
 166 B.R. at 239;
 
 See generally
 
 29 U.S.C. §§ 1132, 1145 (providing cause of action for delinquent contributions). Each missed payment gives rise to an immediate right to payment by a plan, but withdrawal liability is premised on an employer’s proportionate share of unfunded vested benefits
 
 at the time of withdrawal.
 
 29 U.S.C. § 1393(c);
 
 see also In re CD Realty Partners,
 
 205 B.R. 651 (Bankr.D.Mass.1997).
 

 CPT argues that the Bankruptcy Code defines whether a claim existed prior to withdrawal. The Code defines claim broadly to include a “right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured or unsecured.” 11 U.S.C. § 101(4)(A). This definition “reflects Congress’ broad rather than restrictive view of the class of obligations that qualify as a ‘claim, giving rise to a debt.’ ”
 
 Penn. Dept.
 
 
 *408
 

 of Public Welfare v. Davenport,
 
 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Congress described the definition as the “broadest possible,” and added that the Code “contemplates that all legal obligations of the debtor will be able to be dealt with in the bankruptcy case ... It permits the broadest possible relief in the bankruptcy court.” U.S.Code Cong. & Admin. News 1978, p. 6266.
 

 Hupp was engaged in Chapter 11 reorganization proceedings and its plan of reorganization was ultimately confirmed. The debts that were discharged, then, would be all appropriate debts as defined in the Bankruptcy Code. The district court held the Plan had a contingent right to payment, and therefore a “claim” against Hupp for withdrawal liability prior to withdrawal. Although this contingent claim does not fully ripen into an enforceable “right to payment” until actual withdrawal, the district court focused on the statutory language modifying “right to payment.” The statute adds, “whether or not such a right is reduced to judgment, ... contingent, ... or unsecured.” 11 U.S.C. § 101(4)(A). This, Hupp argues, characterizes withdrawal liability as a “claim” of the Plan prior to actual withdrawal.
 

 We recognize that this argument is in line with some cases to address the issue.
 
 In re CD Realty Partners,
 
 205 B.R. 651, 659 (Bankr.D.Mass.1997). Several cases have directly held that withdrawal liability is a pre-petition claim, dischargeable in bankruptcy.
 
 See, e.g., In re Art Shirt Ltd., Inc.,
 
 93 B.R. 333 (E.D.Pa.1988) (holding debtor’s withdrawal liability is a “debt” prior to withdrawal for purposes of determining insolvency);
 
 In re Pulaski Highway Express, Inc.,
 
 57 B.R. 502, 504-508 (Bankr.M.D.Tenn.1986) (holding withdrawal liability was a pre-petition, unsecured claim except for liability allo-cable to the 37 days debtor operated as a debtor-in-possession);
 
 In re Silver Wheel Freightlines, Inc.,
 
 57 B.R. 476 (Bankr.D.Or.1985) (pension plan claim for withdrawal liability was an entirely “prepetition, unsecured claim”);
 
 In re Chateaugay Corp.,
 
 130 B.R. 690 (S.D.N.Y.1991) (only withdrawal liability attributable to post-petition labor entitled to administrative expense treatment). These cases characterize a claim for withdrawal liability prior to withdrawal as a “contingent claim” wholly within the definition in the Bankruptcy Code.
 

 In
 
 CD Realty Partners,
 
 the court focused on the Bankruptcy Code’s goal of having bankruptcy discharge all financial obligations of the debtor.
 
 Id.
 
 at 656. The court then defined “contingent claim” to include two factors: 1) the existence of extrinsic events whose occurrence will trigger a “claim,” and 2) the extrinsic events should reasonably have been contemplated by the parties.
 
 Id.
 
 The court stated that many factors control the time of withdrawal, including financial position, labor conditions, and bankruptcy proceedings. Likewise, the existence of underfunding is affected not only by employer contributions, but by actuarial assumptions and rates of return.
 
 Id.
 
 at 657-58. Additionally, both an employer and a pension plan know withdrawal liability will be assessed against an employer who leaves an underfunded plan. Withdrawal liability, meeting both of the above factors, the court argued, should therefore be classified as a “claim.”
 
 Id.
 

 Many of the above decisions dealt with employers who withdrew
 
 during
 
 Chapter 11 proceedings. The parties recognize this would give rise to a “claim.” It was dictum, then, for those courts to add that the claims arose even before the petition was filed.
 
 See, e.g., In re Pulaski,
 
 57 B.R. at 510 (except for part allocable to benefits earned during employer acting as debtor-in-possession, withdrawal liability is “prepetition, unsecured claim”). One additional case has held withdrawal liability to be a “claim” for bankruptcy purposes, even though, as in the instant case, withdrawal did not occur until after confirmation.
 
 In re Art Shirt Ltd., Inc.,
 
 93 B.R. 333 (E.D.Pa.1988). That case, however, was deciding whether withdrawal liability could be considered a claim for determining insolvency.
 
 Id.
 
 It was the same legal issue, but different facts.
 

 On the other hand, the Plan argues a “right to payment” requires the existence of a legal relationship that gives rise to an asserted right to payment.
 
 In re Remington Rand Corp.,
 
 836 F.2d 825, 833 (3d Cir.1988).
 
 *409
 
 “[A] mere pre-petition legal relationship between a creditor and a debtor, without more, is insufficient to create a pre-petition right to payment.”
 
 In Matter of United Merchants and Manufacturers, Inc.,
 
 166 B.R. 234, 237 (Bkrtcy.D.Del.1994). It is not enough, the Plan argues, to look at the broad definition of “claim” in the Bankruptcy Code. The relevant non-bankruptcy law must be examined to see whether the required legal relationship exists in the applicable context.
 
 Remington,
 
 836 F.2d at 831. The court in
 
 Remington
 
 defined the required legal relationship in the context of common law contract.
 
 Remington,
 
 836 F.2d at 831. There were several breaches of contract prior to a bankruptcy petition by the debtor. The legal relationship giving rise to a right to payment (and thus a “claim”) arose when the non-breaching party learned of the breaches.
 
 Id.
 
 at 831-33. Since that party learned of the breaches pre-confirmation, a “claim” existed and that claim was discharged at confirmation. This legal relationship, then, required a violation of the relevant non-bankruptcy law and knowledge of that violation by the other party; these factors gave rise to a “right to payment.”
 

 The relevant non-bankruptcy law in the instant case is ERISA, as amended by MPPAA. That law defines withdrawal liability as imposed when a plan has unfunded vested benefits, and an employer withdraws from the plan. 29 U.S.C. §§ 1381-1391. Using the logic of
 
 Remington,
 
 the court in
 
 United Merchants & Manufacturers
 
 held that a multiemployer pension plan does not have a claim for withdrawal liability until actual withdrawal.
 
 United Merchants & Manufacturers,
 
 166 B.R. at 239. In
 
 United Merchants & Manufacturers,
 
 the commonly controlled employers filed Chapter 11 petitions.
 
 Id.
 
 at 236. A plan of reorganization was confirmed nine months later, and the debtors became UM & M.
 
 Id.
 
 UM & M assumed the collective bargaining agreements that had existed between each employer and a labor union prior to reorganization.
 
 Id.
 
 After reorganization was complete, UM & M objected to a proof of claim filed by the plan, asserted the plan in fact had a claim for withdrawal liability prior to confirmation, and that claim had been discharged through bankruptcy.
 
 Id.
 
 The court held that because no relevant violation of ERISA and MPPAA occurred prior to both withdrawal
 
 and
 
 the existence of an underfunded plan, no right to payment, and thus no “claim,” existed at that time.
 
 Id.
 
 at 239.
 

 The logic employed by the UM & M court is thorough and appealing. A multiemployer pension plan has no enforceable right to payment for withdrawal liability until an employer actually withdraws from a plan, leaving the plan underfunded. Since this may never occur, it cannot be said that a legal right to payment exists prior to withdrawal.
 

 The UM & M solution appeals to a sense of fairness, as well as to an understanding of ERISA.' The court basically told employers that if they want their withdrawal liability discharged, they must completely withdraw from the plan prior to confirmation. They cannot remain a part of the plan and simultaneously have their withdrawal liability forgiven should they ever decide to withdraw.
 

 Withdrawal liability is not a “claim” prior to confirmation. Although the Bankruptcy Code defines “claim” broadly, the relevant non-bankruptcy law must be examined to see whether a right to payment, even a contingent right, exists. It is possible that an employer could fail to make every required contribution to a multiemployer pension plan, eventually withdraw from the plan, and still be assessed no withdrawal liability. Withdrawal liability is based on an employer’s share of unfunded vested benefits at withdrawal, not on failure to make required contributions. As a result, there can be no pre-withdrawal breach of ERISA giving rise to a “right to payment” by a plan. Upon the facts at issue, a “claim” cannot exist prior to withdrawal.
 

 The order of the district court is vacated and the award of the arbitrator is reinstated. The Plan did not have a claim for withdrawal liability pre-confirmation, so no discharge occurred.
 

 VACATED and REMANDED for reinstatement of the award of the arbitrator.
 

 [1]
 

 . ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, distinguishes between a "complete” and "partial” withdrawal. 29 U.S.C. H 1383, 1385. Partial withdrawals involve their own set of rules, but they are not applicable here because both parties have stipulated that Hupp "completely” withdrew in February, 1993.