Andre AGASSI, Agassi Enterprises, Inc., Joe Montana, Big Sky, Inc., Monica Seles, MS Basenet, Inc., Eldrick "Tiger" Woods and ETW Corp., Plaintiffs,

v.

PLANET HOLLYWOOD INTERNATIONAL, INC. and All Star Cafe International, Inc., Defendants.

No. 00–1052–JJF.

United States District Court, D. Delaware.

Nov. 13, 2001.

barred by Defendants' confirmed Plan of Reorganization. For the reasons discussed, Plaintiffs' Motion For Partial Summary Judgment will be granted in part and denied in part, and Defendants' Cross–Motion For Summary Judgment will be denied.

Kevin Gross of Rosenthal, Monhait, Gross & Goddess, Wilmington, Delaware, Of Counsel: Richard A. Chesley and Susan L. Winders of Jones, Day, Reavis & Pogue, Chicago, Illinois, for Plaintiffs.

Pauline K. Morgan and M. Blake Cleary of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Of Counsel: Laurence Greenwald, Robin E. Keller of Stroock & Stroock & Lavan LLP, New York City, for Defendants.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is a Motion For Partial Summary Judgment (D.I.12) filed by Plaintiffs, Andre Agassi, Agassi Enterprises, Inc., Joe Montana, Big Sky, Inc., Monica Seles, MS Basenet, Inc., Eldrick "Tiger" Woods and ETW Corp. By their Motion, Plaintiffs seek attorney's fees and related expenses from Defendants, Planet Hollywood International, Inc. and All Star Cafe International Inc., as a result of Defendants' alleged breach of the executory endorsement contracts (the "Celebrity Contracts") between Plaintiffs and Defendants for the promotion of a chain of sports-theme restaurants known as the Official All Star Cafe. Defendants have also filed a Cross–Motion For Partial Summary Judgment (D.I.17) requesting the Court to conclude that Plaintiffs' claims for attorney's fees and rejection damages are

## BACKGROUND

Defendants, along with several subsidiaries, joint venture partners and franchisees, own and operate distinctive movie, sports and entertainment-based theme restaurants and retail merchandise stores throughout the United States, Europe and Canada. In the early 1990s, Defendants and their founder, Robert Earl, sought to promote a new chain of restaurants, the Official All Star Cafe. To promote the Official All Star Cafe, Defendants solicited the services of certain celebrity athletes, including Andre Agassi, Monica Seles, Joe Montana and Eldrick "Tiger" Woods (the "Athletes").

In April 1996, Plaintiffs Andre Agassi, Joe Montana and Monica Seles, through their respective service corporations, entered into the Celebrity Contracts with Defendants. Thereafter, in December 1996, Plaintiff Eldrick "Tiger" Woods, through his service corporation, entered into a similar Celebrity Contract. Each of the Celebrity Contracts contained an indemnity provision which provided, in pertinent part, that:

> Planet Hollywood and ASC International (collectively, the "Indemnitors"), jointly and severally, shall indemnify [the Plaintiffs] and their respective affiliates, designees/estate and authorized representatives (collectively, the "Indemnitees") for any and all expenses, damages, suits, judgments, claims, actions or other liabilities (including, without limitation, reasonable attorney's fees) arising from or in any way relating to the

financing, promotion or operation of the restaurants, including but not limited to ... ASC International's breach or threatened breach of its obligations hereunder.

(Ex. A–C, ¶ 17, Ex. D, ¶ 16).

On October 12, 1999 (the "Petition Date"), Defendants voluntarily filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code. By Order dated October 13, 1999, this Court, sitting in bankruptcy, set December 13, 1999 (the "Bar Date"), as the filing deadline for claims arising prior to the Petition Date, excluding certain enumerated exceptions.[1]

Timely Proofs of Claim were received by Defendants from the following individuals and/or entities: Plaintiff Joe Montana, Plaintiff Joe Montana and his wife, Jennifer Montana, Plaintiff Big Sky, Inc., the service company for Plaintiff Joe Montana, Plaintiff MS Basenet, Inc., the service company for Plaintiff Monica Seles, Plaintiff ETW Corp., the service company for Plaintiff Tiger Woods, and Plaintiff Agassi Enterprises, Inc., the service company for Plaintiff Andre Agassi.

The Proof of Claim filed by Plaintiff Joe Montana asserts a general unsecured, nonpriority claim of $92,372.83 for the alleged value of memorabilia provided by Plaintiff Montana to Defendants. An itemized list of memorabilia and the Celebrity Contract is attached to this claim. The Proof of Claim filed by Joe and Jennifer Montana asserts unliquidated damages based upon claims for breach of contract, fraud, misrepresentation and violations of federal and state security laws and regulations. The Proof of Claim filed by Plaintiff Big Sky, Inc. mirrors the claims filed by Plaintiff Montana, individually, and Plain-

tiff Joe Montana and Jennifer Montana, jointly. None of these Proofs of Claim specifically assert a right to indemnification or attorney's fees under the Celebrity Contracts.

With regard to the Proof of Claim filed by Plaintiffs MS Basenet, Inc. and ETW Corp., both Proofs of Claim assert an unliquidated amount for Defendants' alleged breach of the Favored Nations provision in the relevant Celebrity Contracts and seek as damages the difference between the aggregate more favorable compensation given to another celebrity and that provided under the relevant Celebrity Contracts. Copies of the relevant Celebrity Contracts are attached to both of these Proofs of Claim. However, like the Montana Proofs of Claim discussed above, neither of these Proofs of Claim specifically assert a right to indemnification or attorney's fees under the Celebrity Contracts.

As for Plaintiff Agassi Enterprises, Inc., two Proofs of Claim were filed, an original and an Amended and Restated Proof of Claim. The Amended and Restated Proof of Claim annexes the relevant Celebrity Contract and asserts an unsecured, nonpriority claim in an unliquidated amount based upon three grounds: (1) breach of the Favored Nations clause in the relevant Celebrity Contract, (2) indemnification incurred by Agassi Enterprises in connection with the Debtors' breach of the relevant Celebrity Contract, and (3) all other claims arising under the Agassi Agreement.

In January 2000, after the Bar Date for claims expired, the Court confirmed Defendant's Plan of Reorganization. The Plan became effective on May 9, 2000.

---

1. By Order of Chief Judge Robinson of the United States District Court for the District of Delaware, the bankruptcy case designated, *In re Planet Hollywood, et al.*, Case No. 99–3612, was reassigned to Judge Walrath of the United States Bankruptcy Court for the District of Delaware.

Section 9.2 of the Plan addresses barred claims. In pertinent part, Section 9.2 provides:

> Bar to Rejection Damages. If the rejection of an executory contract or unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not previously evidenced by a Filed proof of Claim or barred by a Final Order, shall be forever barred and shall not be enforceable against the Debtors, Reorganized PHI, the other Reorganized Debtors or their properties or agents, successors, or assigns unless a proof of Claim relating thereto is Filed with the Bankruptcy Court within thirty (30) days after the later of (i) the entry of a Final Order authorizing such rejection and (ii) the Effective Date, or within such shorter period as may be ordered by the Bankruptcy Court.

(D.I.17, Ex. 2).

In connection with the Plan, Defendants sought to assume the Celebrity Contracts at issue. Pursuant to a stipulation among the parties, this issue was reserved for a later determination by the Court. By Memorandum Opinion and Order dated November 21, 2000, the Court denied Defendants' motion to assume the Celebrity Contracts on the grounds that the Celebrity Contracts were personal service contracts which were not assignable absent the celebrities' consent. *In re Planet Hollywood International, Inc.,* No. 99–3612(JJF), at 30–33 (D.Del. Nov. 21, 2000). Consistent with this ruling, the Court granted Plaintiffs' motion for relief from the automatic stay to permit them to pursue further action against Defendants with respect to the Celebrity Contracts.

Shortly thereafter, Plaintiffs' counsel sent a letter to Defendants' counsel confirming the termination of the Celebrity Contracts and demanding Defendants to immediately cease using Plaintiffs' names and likenesses, return Plaintiffs' career memorabilia, and reimburse Plaintiffs for documented attorney's fees and costs arising in connection with the litigation over the assumption of the Celebrity Contracts. Plaintiffs allege that despite this letter, Defendants continued to wrongfully utilize Plaintiffs' names, likenesses and memorabilia, and failed to reimburse Plaintiffs for their attorney's fees.

As a result, Plaintiffs filed the instant action against Defendants for breach of contract, misappropriation, and violations under the Lanham Act, 15 U.S.C. § 1125. As relief, Plaintiffs request, among other things, reimbursement for their attorney's fees. In addition, Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction against Defendants enjoining them from using Plaintiffs' names, likenesses, and other memorabilia. The Court granted Plaintiffs the requested injunctive relief and ordered Defendants to gather all of Plaintiffs' memorabilia in Defendants' possession for collection by a representative of Plaintiffs.

Following the Court's order granting Plaintiffs' request for injunctive relief, Plaintiffs filed the instant Motion For Partial Summary Judgment seeking attorney's fees under the Celebrity Contracts. Defendants filed a Response To Plaintiffs' Motion For Partial Summary Judgment And Cross–Motion For Partial Summary Judgment (D.I.17), and Plaintiffs filed a Reply In Support Of Its Motion For Partial Summary Judgment (D.I.20). In addition, Defendants filed a Memorandum In Response To Plaintiffs' Reply Memorandum In Support Of Its Motion For Partial Summary Judgment (D.I.25) to address several issues raised in Plaintiffs' Reply Memorandum. Accordingly, the instant Motion is fully briefed and ripe for the Court's review.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." . . .
>
> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

By their Motion For Partial Summary Judgment, Plaintiffs contend that they are entitled to reimbursement of their attorney's fees arising from or relating to Defendants' breach of the Celebrity Contracts. Specifically, Plaintiffs contend that because the Court concluded that the Celebrity Contracts were personal service contracts not capable of assumption under Section 365(c), the Celebrity Contracts were deemed rejected by Defendants by operation of law under the Plan. Because rejection of a contract under Section 365(g) of the Bankruptcy Code constitutes a breach of that contract, Plaintiffs contend that Defendants indemnification obligations were triggered under the relevant Celebrity Contracts thereby making Defendants liable for the attorney's fees incurred by Plaintiffs.

In response, Defendants raise three arguments. First, Defendants contend as a threshold matter, that some of the Plaintiffs did not file Proofs of Claim and/or the Proofs of Claim that were filed were deficient. Second, Defendants contend that even if the Proofs of Claim were filed and not deficient, none of the Plaintiffs are entitled to attorney's fees incurred in litigating bankruptcy issues such as whether the Celebrity Contracts were capable of assumption. Third, Defendants contend that, to the extent that any Plaintiffs are entitled to damages as a result of Defendants' breach by operation of the Bankruptcy Code and the Court's ruling on the assumption issue, Plaintiffs' claims are general, unsecured claims in Defendants' bankruptcy cases. The Court will examine the parties' arguments in turn.

## I. Whether Plaintiffs' Claims Are Barred By The Failure To File Individual Proofs of Claim And/Or By Deficiencies In The Proofs Of Claim That Were Timely Filed

As a threshold matter, Defendants contend that Plaintiffs are barred under Section 9.2 of the Plan from pursuing their claims because they either did not file

individual Proofs of Claim, or the Proofs of Claim that were filed were deficient. Specifically, with regard to Plaintiffs Seles, Woods and Agassi, Defendants contend that none of these Plaintiffs filed individual Proofs of Claim in Defendants bankruptcy cases. As for the Proofs of Claim that were filed, Defendants contend that they are deficient, because they fail to assert a right to indemnification for legal fees and expenses. Accordingly, Defendants contend that the Proofs of Claim that were filed are insufficient to allow Plaintiffs to pursue their claims for attorney's fees and other rejection damages.

■ After reviewing the record in light of the applicable law, the Court is not persuaded by Defendants' arguments. Defendants seek to draw a distinction between Plaintiffs' service companies and Plaintiffs as individuals. However, in the circumstances of this case, the Court is not persuaded that such a distinction is warranted. In its November 21, 2000 Memorandum Opinion and Order, the Court rejected a similar argument by Defendants in which they sought to create a distinction between Plaintiffs and their service companies for the purposes of arguing that the Celebrity Contracts were not personal service contracts. In rejecting Defendants' attempt to sever the Athletes from their respective service companies, the Court observed that even Defendants' counsel acknowledged that the service companies were only placed in between the Athletes and Defendants for the purposes of protecting the Athletes from tax and other liabilities. *In re Planet Hollywood*, No. 99–3612 at 30 & n. 6. Accordingly, the Court concluded that the Celebrity Contracts were appropriately characterized as personal in nature, despite the fact that they were formally entered into by the Athletes' respective service companies.

In the context of the instant dispute, the Celebrity Contracts form the basis for the Proofs of Claim at issue, and therefore, the Court declines to draw a distinction between the service company and its representative Athlete such that the individual Athlete would be precluded from pursuing his or her claim for rejection damages under the Celebrity Contracts. Indeed, Defendants have not offered the Court any contrary legal authority suggesting that it would be appropriate to limit or apportion any recovery of fees between the individual Athlete and his or her service company. Accordingly, absent any contrary authority and in light of the Court's previous ruling that the Celebrity Contracts are personal service contracts, the Court concludes that the Athletes are not precluded from pursuing their claims on the basis that the Proofs of Claim at issue were filed by the Athlete's service companies and not by the individual Athletes.

■ To the extent that Defendants contend that the Proofs of Claim are otherwise deficient because they fail to expressly state a claim for attorney's fees or "rejection" damages, the Court likewise rejects Defendants' argument. First, at least three of the claims, those filed by Plaintiffs Agassi Enterprises, Inc., Big Sky, Inc. and Joe Montana expressly contemplate damages for breach of contract, which in the Court's view, embraces a claim for damages under the indemnity clauses in the respective Celebrity Contracts. Indeed, the Amended and Restated Proof of Claim filed by Plaintiff Agassi Enterprises seeks "Damages incurred by Creditor in connection with Debtor's breach of the Agreement, and all other claims arising under the Agreement." (D.I.17, Ex. 8) (emphasis added). Similarly, the Proof of Claim filed by Plaintiffs Big Sky, Inc. and Joe and Jennifer Montana refer to claims for breach

of contract in an uncertain amount of damages. (D.I.17, Ex. 4, 5). Thus, in the Court's view, these Proofs of Claim are sufficient on their face to embrace the attorney's fees and other rejection damages claims at issue.

As for the Proofs of Claim filed by Plaintiffs MS Basenet, Inc. and ETW Corp., Defendants correctly point out that on their face, these Proofs of Claim refer only to the "Favored Nations" provisions of the Celebrity Contracts. However, the claims based on the "Favored Nations" provisions are, in essence, breach of contract claims, and both Proofs of Claim contain a copy of the respective Celebrity Contracts containing the indemnification provision. Accordingly, in these circumstances, the Court concludes that the Proofs of Claim filed by Plaintiffs MS Basenet, Inc. and ETW Corp. are appropriately construed to include claims for indemnification of attorney's fees and other rejection damages resulting from Defendants' breach of the Celebrity Contracts as provided for in the respective Celebrity Contracts.

■■■■■ In the alternative, the Court concludes that, even if the existing Proofs of Claim filed by Plaintiffs MS Basenet, Inc. and ETW Corp. are insufficient to embrace claims for indemnification of attorney's fees and other rejection damages, Plaintiffs Seles and Woods have filed informal proofs of claim for attorney's fees and rejection damages. The Court of Appeals for the Third Circuit recognizes the validity of informal proofs of claim if five elements are satisfied. Specifically, an informal proof of claim must (1) be in writing; (2) contain a demand by the creditor on the estate; (3) express an intent to hold the debtor liable for the debt; (4) be filed with the bankruptcy court; and (5) be justified in light of the facts and equities of the case. *See e.g. In re Petrucci*, 256 B.R.

704, 706 (Bankr.D.N.J.2001); *Hatzel & Buehler, Inc. v. Station Plaza Associates, L.P.*, 150 B.R. 560 (Bankr.D.Del.1993).

In the circumstances of this case, the Court concludes that Plaintiffs' Objection To The Omnibus Motion Pursuant To Section 365 Of The Bankruptcy Code For Authority To Assume Or Reject As Applicable, Certain Executory Contracts And Leases, And A Related Request For Relief From The Automatic Stay To Terminate Agreements And Repossess Property (the "Objection") satisfies the criteria for an informal proof of claim. The Plaintiffs' Objection is a document in writing filed with the Bankruptcy Court. The document expressly states that Plaintiffs seek relief from the automatic stay to "enforce their termination rights" under the Celebrity Contracts. By the terms of the Celebrity Contracts, these termination rights include the right to attorney's fees and other damages, and thus, the Court concludes that Plaintiffs' Objection both makes a demand on the Debtor–Defendants' estate and evidences an intent to hold the estate liable as required for an informal proof of claim.

Further, in light of the particular circumstances in this case, the Court concludes that it would be equitable to allow Plaintiffs Seles, Woods, MS Basenet Inc. and ETW Corp. to proceed based on this informal proof of claim. Indeed, Plaintiffs contend, and Defendants have not disputed, that the attorney's fees in this case are not divisible among the individual Plaintiffs because the legal work done in this case was not to the benefit of one particular Plaintiff, but for the benefit of all Plaintiffs. In addition, the Court observes that Plaintiffs communicated their intent to collect attorney's fees from Defendants on numerous occasions prior to the expiration of the applicable bar date. Specifically, Plaintiffs' counsel advised Defendants by

letter on November 28, 2000, that Plaintiffs sought attorney's fees in connection with the Celebrity Contracts, and on December 15, 2000, Plaintiffs filed the instant action expressly seeking attorney's fees arising from Defendants' breach of the Celebrity Contracts. While the Court understands that these documents in and of themselves may be insufficient to constitute informal proofs of claim because they were not filed in the Bankruptcy Court, the Court believes that coupled with the Plaintiffs' Objection, they suggest circumstances in which it would be equitable to allow Plaintiffs Seles, Woods, MS Basenet, Inc. and ETW Corp. to proceed with their claims. Accordingly, given the facts and circumstances of this particular case, the Court concludes that Plaintiffs' Seles, Woods, MS Basenet, Inc. and ETW Corp. have filed informal proofs of claims sufficient to permit them to pursue their claims for attorney's fees and rejection damages. Having concluded that Plaintiffs are not precluded under Section 9.2 of the Plan from pursuing their claims for attorney's fees and rejection damages, the Court will deny Defendants' Cross–Motion For Summary Judgment insofar as it seeks to bar Plaintiffs' claims for rejection damages and attorney's fees, and turn to the issue of whether Plaintiffs are entitled to reimbursement of their attorney's fees under the Celebrity Contracts.

## II. Whether Plaintiffs Are Entitled To Reimbursement Of Their Attorney's Fees As A Matter Of Law Under The Celebrity Contracts

By their Motion, Plaintiffs contend that they are entitled to attorney's fees under the indemnification provision of the respective Celebrity Contracts as a result of Defendants' breach by operation of law of the Celebrity Contracts. In support of their argument, Plaintiffs rely on both legal arguments under contract law and equitable arguments based on Defendants' alleged frivolous filing of the assumption motion and Defendants' alleged willful disregard of the Court's November 21, 2000 Order resolving the assumption issue.

In response to Plaintiffs' arguments, Defendants contend that Plaintiffs are not entitled to attorney's fees incurred in litigating bankruptcy issues such as whether the celebrity contracts were capable of assumption. In addition, Defendants contend that to the extent that Plaintiffs are permitted to recover any attorney's fees, Plaintiffs claims constitute general unsecured claims. As for Plaintiffs' equitable argument, Defendants contend that the Court should ignore the argument under D. Del. L.R. 7.1.3(c)(2), because it is a newly raised argument in Plaintiffs' Reply Memorandum. In the alternative, Defendants contend that their assumption motion was not frivolous and that they did not violate the Court's November 21, 2000 Order.

### A. Whether Plaintiffs Are Entitled To Attorney's Fees Related To The Litigation Of Bankruptcy Issues

█ The parties agree that as a result of the Court's November 21, 2000 Order concluding that the Celebrity Contracts were personal service contracts not capable of assumption under Section 365(c) of the Bankruptcy Code, Defendants could not assume the Celebrity Contracts. Because Defendants could not assume the Celebrity Contracts, the parties also agree that the Celebrity Contracts were deemed rejected by Defendants under Section 9.1 of the Plan. The parties further agree that pursuant to Section 365(g) of the Bankruptcy Code, the rejection of an executory contract constitutes a breach of the contract.

Pursuant to the terms of the Celebrity Contracts, Plaintiffs are entitled to reasonable attorney's fees "arising *from or in any way relating to* the financing promotion or operation of the restaurants, including but not limited to … *[Defendant's] breach or threatened breach of its obligations hereunder.*" (Ex. A–C, ¶ 17, Ex. D, ¶ 16) (emphasis added). With the exception of their argument that Plaintiffs' claims are barred under Section 9.2 of the Plan, Defendants apparently do not contest that Plaintiffs have a contractual right to receive indemnification for their attorney's fees. However, Defendants disagree as to the scope of the attorney's fees recoverable by Plaintiffs. Specifically, Defendants contend that Plaintiffs are not entitled to recover attorney's fees incurred in litigating bankruptcy issues. In contrast, Plaintiffs contend that they are entitled to all reasonable attorney's fees incurred in enforcing their rights under the Celebrity Contracts, including issues litigated in the Bankruptcy Court.[2]

■■ After considering the parties' arguments in light of the applicable law, the Court agrees with Defendants that Plaintiffs are not entitled to recover attorney's fees they incurred litigating bankruptcy issues in this case. Attorney's fees are not independently recoverable under the Bankruptcy Code, but they may be recovered in bankruptcy proceedings under state law if the parties' contractual arrangement provides for the recovery of attorney's fees. *See e.g. In re Sokolowski,* 205 F.3d 532, 535 (2d Cir.2000). Although the Court has been unable to locate any

cases on point in this Circuit, several courts have clarified this principle holding that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." *In re Fobian,* 951 F.2d 1149, 1153 (9th Cir.1991); *see also In re Sokolowski,* 205 F.3d at 535 (2d Cir.2000) (citing *Fobian,* 951 F.2d at 1152); *In re Child World, Inc.,* 161 B.R. 349, 354 (Bankr.S.D.N.Y. 1993).

Plaintiffs contend that the Celebrity Contracts provide for the collection of attorney's fees that are "in any way" related to Defendants' breach of the Celebrity Contracts, and Plaintiffs direct the Court to two cases, *In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985) and *In re Exchange Resources,* 214 B.R. 366, 371 (Bankr. D.Minn.1997), in support of their proposition that they are entitled to all reasonable attorney's fees, including those arising in connection with the bankruptcy litigation. However, the Court is not persuaded by the rationale of these cases and believes that neither case entirely supports Plaintiffs' position. For example, in *Exchange Resources,* the court addressed a tenant's right to recover attorneys fees under an unexpired, nonresidential lease resulting from the tenant-debtor's failure to pay rent. 214 B.R. at 368–369. The court recognized that in most circumstances, the recovery of attorney's fees requires a breach by the tenant and that "[t]he recovery of attorney's fees, then, is logically limited to those accrued in legal proceed-

---

**2.** In their Reply Brief, Plaintiffs suggest that they are entitled to "all attorney's fees and related expenses incurred due to Defendants' breach of the Celebrity Contracts." (D.I. 20 at 13). Defendants seize on this point in their Response To Plaintiff's Reply Memorandum and contend that Plaintiffs are attempting to expand the relief they are seeking. Regard-

less of whether Plaintiffs were, in fact, attempting to expand the relief sought, the Court observes that the express contractual language limits recovery to "reasonable" attorneys' fees, and therefore, the Court concludes that any attorney's fees award is governed by the reasonableness standard.

ings to address the breach." *Id.* at 370. In this case, however, the Court cannot properly characterize Plaintiffs' expenses in litigating the assumption issue as expenses designed to address a breach by Defendants, and therefore, the Court does not find *Exchange Resources* to be particularly instructive in this case.

The Court's view of the *Martin* case is similar. In *Martin*, the court addressed the question of recovery of attorney's fees under Section 523(d) of the Bankruptcy Code. 761 F.2d at 1167–1168. While the *Martin* court recognized that attorney's fees could be recoverable if the loan agreement so provided, the court's analysis was directed to fees incurred to collect on the note. In other words, the situation in *Martin*, like the situation in *Exchange Resources* was predicated on actions taken to address the debtors' breach. In this case, however, the Court cannot conclude that the expenses incurred by Plaintiffs for attorney's fees to address the assumption issue were expenses designed to address Defendants' breach of the Celebrity Contracts. Indeed, it was the resolution of the assumption issue that led to Defendants' breach by operation of law and thus, the attorney's fees expended by Plaintiffs on the assumption issue were actually expended prior to Defendants' breach.[3]

In sum, the Court concludes that the bankruptcy litigation pertaining to the assumption issue involved distinct federal issues under the bankruptcy code which are separate and apart from contractual enforcement issues like those discussed in *Martin* and *Exchange* Resources. As such, the Court concludes that attorney's fees are not warranted absent bad faith or harassment by Defendants. *Fobian*, 951 F.2d at 1153. Plaintiffs, in their Reply Brief, contend that Defendants have acted in bad faith because their assumption motion was frivolous and they willfully disregarded the Court's November 21, 2000 Order. However, the Court is not persuaded by Plaintiffs' arguments. The issues raised in Defendants' assumption Motion involved sophisticated legal issues that required substantial discovery by the parties, an evidentiary hearing before the Court, and ultimately, an extensive analysis by the Court on the issues. Accordingly, the Court cannot conclude that Defendants' assumption motion was filed in bad faith.

Similarly, in these circumstances, the Court cannot conclude that Defendants' willfully violated the Court's November 21, 2000 Order such that Plaintiffs would be entitled to legal fees in connection with the underlying bankruptcy litigation relevant to this case. The Court's November 21, 2000 Order implemented its rulings on the legal issue of assumption and granted Plaintiffs' request for relief from the automatic stay. The Court did not direct Defendants to take a particular action or refrain from a particular action as a result of that Order. Indeed, Plaintiffs did not request a temporary restraining Order un-

---

**3.** In Plaintiffs' Opening Memorandum, they refer only to Defendants' breach by operation of law as a result of the resolution of the assumption issue. However, in Plaintiffs' Reply Memorandum, they refer to Defendants' bankruptcy filing as a breach, in and of itself, of the Celebrity Contracts in which Defendants "agreed not to declare bankruptcy." (D.I. 20 at 2, 4). Clauses in an executory contract that result in a breach of the contract solely due to the bankruptcy filing of a party are considered "ipso facto" clauses which are unenforceable under the Bankruptcy Code. *See Child World, Inc.*, 161 B.R. at 353. Accordingly, the Court is not inclined at this juncture to consider Defendants' initial bankruptcy filing as a breach such that attorney's fees incurred in connection with the assumption motion can be considered fees incurred to address Defendants' breach of the Celebrity Contracts.

til the commencement of this action. While the practical implication of the Court's order was to terminate the Celebrity Contracts and concomitantly Defendants' right to use the Athletes' names and likenesses under the Celebrity Contracts, and while it may well have been both logical and prudent for Defendants to cease using the Athletes' names and likenesses given the Court's rulings, the Court cannot conclude in these circumstances that Defendants' conduct amounted to a willful disregard of a directive of the Court. Accordingly, the Court cannot conclude that Defendants willfully violated the Court's November 21, 2000 Order such that Plaintiffs would be entitled to attorney's incurred as a result of the assumption motion.

Although Plaintiffs are not entitled to attorney's fees resulting from the litigation of the bankruptcy issues in this case, Plaintiffs are, as the Court noted above, entitled to reasonable attorney's fees incurred in connection with Defendants' breach of the agreements under the indemnification provision of the Celebrity Contracts. As such, the Court will turn to the remaining issue raised by the parties concerning the status of these claims.

B.  *Whether Plaintiffs' Claims For Attorney's Fees Incurred As A Result Of Defendants' Breach Of The Celebrity Contracts Are Properly Considered General Unsecured Claims*

■ Defendants contend that any claims for attorney's fees arising out of Defendants' breach by operation of law of the Celebrity Contracts constitute general unsecured claims in Defendants' bankruptcy cases. Plaintiffs response to this argument is limited to its argument based on Defendants' alleged inequitable conduct in

pursuing the assumption motion and defying the Court's November 21, 2000 Order. However, the Court has concluded that Defendants' conduct did not amount to bad faith, and Plaintiffs have not offered the Court any other legal basis to conclude that Plaintiffs' claims for attorney's fees should not be characterized as general unsecured claims. Accordingly, the Court concludes that any claims by Plaintiffs for attorney's fees related to non-bankruptcy matters resulting from Defendants' breach by operation of law of the Celebrity Contracts constitute general unsecured claims in Defendants' bankruptcy case.

### CONCLUSION

For the reasons discussed, Defendants' Cross–Motion For Summary Judgment will be denied, and Plaintiffs' Motion For Partial Summary Judgment will be granted in part and denied in part. Plaintiffs will be precluded from recovering attorney's fees related to the bankruptcy litigation in this case, but permitted to recover as a general unsecured claim other attorney's fees incurred in connection with Defendants' breach of the Celebrity Contracts in accordance with the respective indemnification provisions of the Celebrity Contracts.

An appropriate Order will be entered.