**In re Idalia Roxana CASTILLO, Debtor(s).**

**No. 2:12–bk–15913–BB.**

United States Bankruptcy Court, C.D. California, Los Angeles Division.

March 8, 2013.

Giovanni Orantes, Orantes Law Firm, P.C., Los Angeles, CA, for Debtor.

## MEMORANDUM DECISION SUSTAINING IN PART DEBTOR'S OBJECTION TO ALLOWANCE OF SECURED CREDITOR'S CLAIM

SHERI BLUEBOND, Bankruptcy Judge.

Debtor and debtor in possession Idalia Roxana Castillo (the "Debtor") owns rental property located at 38563 Larkin Avenue, Palmdale, California 93550 (the "Property"), which the Court has valued for plan purposes by order entered July 11, 2012 at $500,000.[1] Deutsche Bank National Trust Company ("Deutsche") holds a first deed of trust against the Property to secure the repayment of a promissory note in the approximate principal amount of $1,031,330.56.

The Debtor filed her Second Amended Chapter 11 Plan of Reorganization [docket no. 131] on October 31, 2012 (the "Plan"). Deutsche made a timely election of the application of Bankruptcy Code section 1111(b)(2) with regard to its Class 6 claim under the Plan. The original proof of claim that Deutsche filed in the above chapter 11 case in June of 2012 reflects a total claim of $1,072,498.04. On December 13, 2012, Deutsche filed an amended proof of claim (the "December Claim") that increased the total amount due Deutsche to $1,207,652.57. Other than certain post-petition real property taxes and insurance payments that are no longer the subject of a dispute[2], the parties agree that the only difference between Deutsche's two proofs of claim is that the December Claim includes post-petition interest and post-petition attorneys' fees.

---

1. The Property is one of six pieces of real property owned by the Debtor: her primary residence on Shasta Place in Lancaster, California, and five other rental properties.

2. The Court has advised the Debtor that these amounts were to have been paid currently by the Debtor and should be treated under the Plan as chapter 11 expenses of administration.

The Debtor filed an objection to the December Claim, arguing, among other things, that, notwithstanding its 1111(b) election, Deutsche may not include post-petition interest and post-petition attorneys' fees in the amount of its secured claim. For the reasons set forth below, the Court holds that the foregoing objection should be sustained in part and overruled in part: Deutsche may include in the amount of its section 1111(b) secured claim post-petition attorneys' fees, but not post-petition interest.

Having made an 1111(b) election, Deutsche holds a secured claim "to the extent that such claim is allowed" pursuant to Bankruptcy Code section 502. 11 U.S.C. § 1111(b)(2). And pursuant to Bankruptcy Code section 502 and the Ninth Circuit's reasoning in *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir.2009), Deutsche's claim for post-petition attorneys' fees should be allowed pursuant to section 502(b). Deutsche's claim for interest that was unmatured as of the petition date, on the other hand, should not. 11 U.S.C. § 502(b)(2). Therefore, the amount of Deutsche's 1111(b)(2) secured claim should include post-petition attorneys' fees, but not post-petition interest.

# I

## PROCEDURAL HISTORY

The Debtor filed for protection under chapter 11 of Title 11 of the United States Code on February 20, 2012, commencing the above chapter 11 case (the "Case"). The Debtor filed a motion to value the Property for plan purposes at $500,000 on May 9, 2012. [Docket No. 55.] The Debtor also sought in that motion to bifurcate Deutsche's claim into secured and unsecured portions. The Court granted the Debtor's motion to the extent that it sought to value the Property at $500,000

for plan purposes but denied the balance of the relief requested in that motion without prejudice to the Debtor's ability to propose any appropriate treatment in a plan of reorganization based upon the foregoing valuation. *[Order Granting in Part and Denying in Part Debtor's Motion to Value Collateral under Section 506(a) for Purposes of Chapter 11 Plan Confirmation on the Real Property Located at 38563 Larkin Avenue, Palmdale, CA,* Docket No. 94.]

The Court set a bar date for the filing of proofs of claim in the Case of June 29, 2012. *[Order On Debtor's Chapter 11 Status Conference and Scheduling Order,* Docket No. 86.] Deutsche was served with the notice of bar date on April 16, 2012 *[Notice of Claims Deadline,* Docket No. 48, p. 6] and filed its first proof of claim, designated claim no. 7 (the "June Claim"), on June 29, 2012. In the June Claim, Deutsche asserted a secured claim for $1,072,498.94.

The Debtor filed a chapter 11 plan of reorganization and an accompanying disclosure statement on July 27, 2012. [Docket nos. 99 and 100.] Deutsche's secured claim with regard to the Property was identified as a Class 5 claim under the original version of the Debtor's plan. Deutsche made a timely election to have its entire claim treated as a fully-secured claim under Bankruptcy Code section 1111(b) on August 21, 2012. *[Notice of Secured Creditor Deutsche Bank National Trust Company's Election Under 11 USC § 1111(b),* Docket No. 106.]

Following a September 7, 2012 hearing on the Debtor's original disclosure statement, the Debtor filed her first amended plan and disclosure statement on September 26, 2012. [Docket nos. 117 and 118.] In this version of the Debtor's plan and in all subsequent versions, Deutsche's se-

cured claim with regard to the Property was placed in Class 6. The Debtor filed her second amended plan and second amended disclosure statement on October 31, 2012. [Docket Nos. 130 and 131.] The Court approved the Debtor's second amended disclosure statement by order entered November 8, 2012 [docket no. 139] and set a confirmation hearing for January 10, 2013.

On December 13, 2012, Deutsche filed the December Claim, increasing the total amount of its claim to $1,207,652.57, and objected to confirmation of the Debtor's plan on several grounds. One of these grounds was that the aggregate of the payments contemplated by the plan for Deutsche's Class 6 claim did not equal or exceed the face amount of Deutsche's claim, as required by section 1111(b). [*Deutsche Bank National Trust Company's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan*, Docket no. 151.] The "Claim Attachment Sheet" that accompanied the December Claim reflected the following itemization of the amounts sought in the December Claim:

| | |
|---|---|
| Principal Balance | $1,031,330.56 |
| Scheduled Interest Due | 64,083.91 |
| Default Interest @ 5% ($143.24 per diem) | 56,579.94 |
| Property Tax Advance (in addition to amounts available in tax escrow) | 6,946.74 |
| Property Insurance Advance | 1,647.07 |
| Late Charges | 3,986.64 |
| Legal Fees | 44,077.71 |
| TOTAL: | $1,207,652.57 |

The Debtor filed a motion to disallow the December Claim on January 4, 2013 [Docket No. 158] (the "Claim Objection"). In the Claim Objection, the Debtor argued that the December Claim should be disallowed because it: (1) was late-filed (having been filed months after the June 29, 2012 bar date); (2) did not include the original or a duplicate of the writing upon which it was based; (3) failed to include an itemized list of prepetition interest, fees, expenses or other charges as required by Federal Bankruptcy Rule 3001(c)(2)(A); (4) had not been filed along with a statement of the amount necessary to cure any default as of the date of the petition as required by Federal Bankruptcy Rule 3001(c)(2)(B); and (5) included post-petition interest and attorneys' fees even though Deutsche is not eligible under Bankruptcy Code section 506(b) to recover such charges.

Inasmuch as Deutsche had filed the June Claim prior to the bar date, the Court rejected the Debtor's contention that the December Claim was untimely and found that the December Claim was an amendment that related back to the timely filing of the June Claim. The Court overruled the balance of the Debtor's procedural objections to the form of the December Claim on the ground that there was no genuine dispute between the parties as to the nature or validity of Deutsche's secured claim nor any question or confusion as to the underlying documents that gave rise to this claim.[3] Deutsche, as the holder of a duly-perfected deed of trust against the Property, would

---

**3.** Although a failure to satisfy procedural requirements concerning the form of a proof of claim may deprive the claimant of the ability to rely on a presumption as to the validity of the claim, it does not constitute a ground for disallowance of that claim where, as here, the debtor does not dispute that the creditor holds a valid and enforceable secured claim.

be entitled to retain its lien against the Property even if it had not filed a proof of claim at all. It could not, therefore, lose the ability to assert a secured claim against the Property by filing a proof of claim that failed to include copies of the underlying loan documents or a schedule that set forth its interest calculations.

However, the Court agreed with the Debtor that the legal issue of whether an undersecured creditor who elects the application of section 1111(b) is entitled to include post-petition interest and attorneys' fees in the amount of its secured Claim was worthy of further consideration. The Court set a continued hearing on the Claim Objection for February 19, 2013 and requested further briefing on this issue. Having reviewed and considered the parties' supplemental briefing on this issue and the oral argument of counsel at the time of the continued hearing on the Claim Objection, and having reached a result that the Court itself considers novel and surprising, the Court offers the following memorandum to explain its analysis and conclusions with regard to this issue.[4]

## II

## DISCUSSION

In a chapter 11 case, unless a secured creditor elects the application of Bankruptcy Code section 1111(b) or another code section provides for a different result, a secured creditor whose collateral is worth less than the amount due under its loan documents holds (1) a secured claim to the extent of the value of its interest in the estate's interest in the collateral and (2) an unsecured claim for the balance of its allowed claim. 11 U.S.C. § 506(a). If that creditor holds collateral worth more than the amount due under its loan documents, Bankruptcy Code section 506(b) permits the creditor to include in the amount of its secured claim "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

If an undersecured creditor elects the application of section 1111(b), however, then "notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2). The Debtor notes in the Claim Objection that section 1111(b)(2) by its terms overrides only the operation of Bankruptcy Code section 506(*a*); it makes no mention of section 506(**b**). Therefore, the Debtor argues, section 506(b) remains in effect and, by implication, prohibits Deutsche from including in its secured claim charges that are only available to a creditor whose collateral has sufficient value to provide for payment of such charges.[5]

Although this argument has superficial appeal based upon the plain language of the statute—and neither the Court nor the parties was able to find any cases that discuss directly whether this interpretation of section 1111(b) has merit—the Court is not writing on an entirely blank slate in considering this issue. Two decisions bear directly on the answer to this question: *Travelers Cas. & Sur. Co. of Am. v. PG &*

---

4. The Court has set yet another continued hearing to address the only remaining factual issue in dispute between the parties—the reasonableness of Deutsche's post-petition attorneys' fees.

5. Bankruptcy Code section 506(b) provides, in pertinent part, "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."

*E*, 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) and *Infonet Mgmt. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir.2009).

## A. *Deutsche is Entitled to Include Post–Petition Attorneys' Fees in its Secured Claim*

■ In *Travelers, supra,* the Supreme Court held that an unsecured creditor's claim for post-petition attorneys' fees could not be disallowed merely because the fees had been incurred in litigating issues that are peculiar to federal bankruptcy law. In so doing, the Supreme Court rejected the holding of *In re Fobian,* 951 F.2d 1149 (9th Cir.1991). According to the Supreme Court in *Traveler's,* even if a party in interest objects to a creditor's proof of claim, "[T]he court shall allow the claim except to the extent that the claim implicates any of the nine exceptions enumerated in § 502(b)." 549 U.S. at 449, 127 S.Ct. 1199.

In the view of the Supreme Court, because the terms of the parties' prepetition agreement permitted the recovery of the fees in question and none of the exceptions enumerated in section 502(b) prohibited the allowance of a contractual claim for postpetition attorneys' fees, the Ninth Circuit should not have applied a rule of its own creation—the "so-called *Fobian* rule—which dictates that attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law' "—to disallow the recovery of these fees. 549 U.S. at 451, 127 S.Ct. 1199. As the Supreme Court explained, "[W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. *See* 11 U.S.C. § 502(b)." *Id.* at 452, 127 S.Ct. 1199.

PG & E urged the Supreme Court to find in *Travelers* that unsecured claims for attorneys' fees should be disallowed pursuant to Bankruptcy Code section 506(b). According to PG & E, "this provision authorizes claims for contractual attorneys' fees to the extent that the creditor is over secured, but disallows such claims to the extent the creditor is either not oversecured or (like Travelers) completely unsecured." *Id.* at 454, 127 S.Ct. 1199. However, the Supreme Court expressly refused to consider this argument as it had not been raised or considered below and had not been mentioned in PG & E's brief in opposition to the request for certiorari. *Id.* at 455, 127 S.Ct. 1199. Thus, *Travelers* does not resolve whether a claim for postpetition attorneys' fees should be allowed in an instance in which such fees are not authorized by section 506(b). The Ninth Circuit's decision in *SNTL Corp., supra,* however, does.

■ In *SNTL,* the Ninth Circuit faced squarely the question of whether section 506(b) should be read for the proposition that post-petition attorneys' fees may be recovered only if they are available under section 506(b). Applying the reasoning of *Travelers* and that of the Ninth Circuit in *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.),* 789 F.2d 674, 678 (9th Cir. 1986), the Bankruptcy Appellate Panel held in an opinion that was adopted in its entirety by the Ninth Circuit that the bankruptcy court should look to section 502 and not section 506 to ascertain whether a claim should be allowed. Section 506 governs the extent to which a claim is *a secured claim,* not the extent to which the claim should be allowed. Therefore, unless one of the subsections of section 502 provides for disallowance of the claim, a claim that would otherwise be valid under applicable nonbankruptcy law should be

allowed:[6]

[W]e reject the argument that section 506(b) preempts postpetition attorneys' fees for all except oversecured creditors.... "When read literally, subsection (b) arguably limits the fees available to the oversecured creditor. When read in conjunction with § 506(a), however, it may be understood to define the portion of the fees which shall be afforded secured status. We adopt the latter reading."

\*    \*    \*    \*    \*    \*

[S]ection 506(b) does not "limit the fees available" as an unsecured claim but merely "define[s] the portion of the fees which shall be afforded secured status." [Citation omitted.]

We agree with the Ninth Circuit, as well as with the Eleventh Circuit in *Welzel v. Advocate Realty Inv., LLC (In re Welzel)*, 275 F.3d 1308, 1316–20 (11th Cir.2001), that the allowance functions of section 506(b) and 502(b) have been incorrectly conflated. Section 502(b), which applies to claims generally, does disallow unmatured interest (*see* 11 U.S.C. § 502(b)(2)); it does not specifically disallow attorneys' fees of creditors or certain other charges. Section 506(b), on the other hand, specifies what may be included in a secured claim.

*SNTL*, 571 F.3d at 841–42 (quoting *268 Ltd.*, 789 F.2d at 678).

Further, even though section 502 directs the bankruptcy court to determine the amount of such claim "as of the date of the filing of the petition," this does not mean that attorneys' fees incurred after the petition date must be disallowed. To the contrary, the Bankruptcy Code's broad definition of a "claim" includes any right to payment that existed as of the petition date, even if, as of that date, the right was contingent and/or unliquidated. 11 U.S.C. § 101(5)(A). " 'So long as the right to collect the fees existed prepetition, the fact that the fees were actually incurred during the postpetition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees.' " *SNTL*, 571 F.3d at 843 (quoting *In re New Power Co.*, 313 B.R. 496, 508 (Bankr.N.D.Ga.2004)). Therefore, the BAP and the Ninth Circuit in *SNTL* reversed the bankruptcy court's ruling that the unsecured creditor's post-petition attorneys' fees must be disallowed because of the creditor's unsecured status.[7] *SNTL*, 571 F.3d at 845.

Applying this reasoning to the facts of the instant case, it follows that Deutsche is permitted to include in the amount of its 1111(b) secured claim attorneys' fees that it is entitled to recover under the terms of its prepetition contract with the Debtor, even if those fees relate to the post-petition period. Section 1111(b)(2) provides that, following an 1111(b) election, notwithstanding section 506(a), the creditor holds a secured claim to the extent that it holds an allowed claim. As Deutsche's would be entitled to an allowed *un*secured claim for post-petition attorneys' fees under section 502(b) and the reasoning of *SNTL*, having made an 1111(b) election, Deutsche may

---

**6.** Although the Eleventh Circuit shares this view, *In re Welzel, infra*, a majority of cases that have examined this issue have held that unsecured creditors cannot recover post-petition attorneys' fees because the plain language of section 506(b) precludes such a result. *See, e.g., In re Elec. Mach. Enter., Inc.*, 371 B.R. 549 (Bankr.M.D.Fla.2007).

**7.** The Circuit then remanded the matter for a determination of whether the creditor was in fact entitled to the fees under the relevant contract or applicable state law or whether grounds existed, other than the lack of collateral, for the disallowance of the fees.

include the amount of these fees in its section 1111(b) secured claim.

### B. *Deutsche May Not Include Post-Petition Interest In Its 1111(b) Secured Claim*

■ This same reasoning produces a contrary result with regard to Deutsche's claim for post-petition interest. Although section 502(b) does not contain a provision that disallows post-petition attorneys' fees, it *does* contain a provision that disallows claims for interest that was unmatured as of the petition date: Section 502(b)(2). As Deutsche holds an 1111(b) secured claim only to the extent that it has an allowed claim under section 502(b), and section 502(b) disallows Deutsche's claim for post-petition interest, it follows necessarily that Deutsche's section 1111(b) secured claim may not include post-petition interest.

When a creditor is oversecured, a creditor may recover post-petition interest under section 506(b), but Deutsche, not having enough collateral to benefit from the application of section 506(b), is left with only the provisions of section 502(b), which expressly disallow a claim for interest that is unmatured as of the petition date.

### III

### CONCLUSION

Although the Ninth Circuit has never expressly discussed whether post-petition interest and attorneys' fees may be included in a creditor's 1111(b) secured claim, the reasoning of its decision in *SNTL* dictates the answer to this question. Under *SNTL*, an unsecured creditor with a pre-petition contract that provides for both attorneys' fees and interest may include in its allowed unsecured claim its post-petition attorneys' fees but not its post-petition interest. Therefore, after making an 1111(b) election, an undersecured creditor

may include in its 1111(b) secured claim post-petition attorneys' fees, but not post-petition interest. Accordingly, the Claim Objection is hereby overruled to the extent that the Debtor objected to the inclusion of post-petition attorneys' fees in the amount of Deutsche's 1111(b) secured claim and is hereby sustained to the extent that the Debtor objected to the inclusion of post-petition interest in the amount of this claim.

As the Court has not yet had an opportunity to consider whether the amount of the post-petition attorneys' fees that Deutsche seeks is reasonable, the Court will conduct a continued hearing on this issue on April 10, 2013 at 11:00 a.m. Deutsche shall file and serve copies of itemized fee statements for the post-petition attorneys' fees that it seeks to recover not later than March 5, 2013. The Debtor shall have to and including March 26, 2013 to file and serve any objections that she may have to the amount of these fees.

**IT IS SO ORDERED.**