**In re Elmer FOBIAN and Elsie Fobian, Debtors.**

**Elmer FOBIAN and Elsie Fobian, Appellants,**

**v.**

**WESTERN FARM CREDIT BANK, Appellee.**

No. 90–16313.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided Dec. 24, 1991.

Wayne B. Harbarger, III, Sacramento, Cal., for appellants.

Gloria M. Greene, Tennant, Greene & Dutra, Sacramento, Cal., for appellee.

Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.

FLETCHER, Circuit Judge:

Elmer and Elsie Fobian appeal from the decision of the Bankruptcy Appellate Panel ("BAP") reversing the bankruptcy court's confirmation of their chapter 12 plan. They argue that the BAP erred in holding that the plan could not be confirmed because it did not meet the requirements of Section 1225 of the Bankruptcy Code.[1] The Bank argues for affirmance of the BAP's decision, and asks that we award it attorneys' fees and costs.

We affirm the BAP's decision, but award the Bank only costs on appeal.

## BACKGROUND

The Fobians are solvent Chapter 12 debtors. They are current on all obligations except a loan from the Bank. The Bank holds a promissory note secured by 70.5 acres of land located in Glenn County, California and stock in the Federal Land Bank Association of Northern California. After the Fobians filed their Chapter 12 petition, the Bank filed a Proof of Claim for $191,660.09. The Proof of Claim stated: "No security interest is held for this claim except Deed of Trust. Stock in FLBA of Northern California perfected pursuant to the Farm Credit Act of 1971." The Fobians made no objections to this Proof of Claim.

While the Fobians filed three plans, only the "First Amended Plan for Reorganization under Chapter 12" (the "Plan") was submitted for confirmation. The Bank filed objections to the plan and a confirmation hearing was held on June 27, 1989.

The Plan provided for treatment of the Bank's claim as follows:

> The "Distressed Property" consists of approximately 70.5 acres of rice land in Glenn County undersecured by a promissory note and deed of trust to FLB [the Bank] in the approximate sum of $190,000 (including interest and penalties). The Debtor also owes approximately 2 years real estate taxes to the County of Glenn on the property. The fair market value of the property is estimated by the Debtors to be $70,500.00  The Debtors

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

would propose alternative treatments to the Secured Creditor.

The first alternative is a refinancing of the debt and write-off of balance over the new principal of $70,500. The new obligation would carry 9.0% interest for a term of 40 years with annual payments beginning 12/31/90.

The second alternative is that the Debtors will surrender the property pursuant to 11 USC 1225(a)(5)(C). Said surrender would be in full satisfaction of the amount allegedly due to the Secured Creditor.

Under either alternative there would be *no* undersecured obligation owed to the secured creditor, no deficiency judgments and no net disposable payments to be made through the trustee. The Secured Creditor may elect their [sic] choice of alternative until the date and time set for the hearing on the Plan. If the Secured Creditor has not chosen their alternative by the date and time set for hearing on confirmation of the Plan, the Debtors may elect their choice of alternative.

The Bank did not elect either alternative. The Fobians then elected the second alternative, surrender of the property.

The Bank objected to confirmation of the Plan on the grounds that the plan did not take into consideration the unsecured portion of the Bank's claim, and did not comply with the requirements of Section 1225(a)(4). The Bankruptcy Court nonetheless confirmed the Plan in a Memorandum Opinion and Order Including Findings of Fact and Conclusions of Law filed on August 7, 1989.

The BAP reversed, holding that because the Plan did not meet the requirements of Section 1225, it could not be confirmed.

## STANDARD OF REVIEW

We review a bankruptcy court's conclusions of law *de novo*. Findings of fact are upheld unless they are clearly erroneous. *Rubin v. West (In re Rubin)*, 875 F.2d 755, 758 (9th Cir.1989).

## DISCUSSION

Because the Plan fails to comply in several ways with Section 1225, the BAP was correct in reversing the bankruptcy court's confirmation. We now analyze in some detail the treatment of the Bank's claim by the bankruptcy court and the Plan.

### I. Section 506

In confirming the plan, the bankruptcy court stated that at the time of confirmation the extent to which the bank was secured was "uncertain." The bankruptcy court found that "it is clear that BANK has not yet become an unsecured creditor." Thus, the Bank could not invoke the protections Section 1225 provides for such claims. Looking in particular to description of the Bank's claim in the Plan itself, the BAP found that the bankruptcy court had erred in holding that the Bank held only a secured claim. The BAP was correct in this holding.

The BAP cited Section 506, which provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Section 506 required the bankruptcy court to determine whether the bank was both a secured and an unsecured creditor. Without doing so, the court could not apply the tests of Section 1225 to the plan.

### II. Section 1225(a)(5)

■ The Fobians argue that the Bank has no unsecured claim under the plan as the Bank was offered the option of receiving the property securing its claim in full

satisfaction of that claim. In support of this argument, the Fobians invoke Section 1225(a)(5), which provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(C) the debtor surrenders the property securing such claim to such holder . . .

11 U.S.C. § 1225(a)(5).

As the Fobians note, cases have acknowledged the "theoretical possibility" of a surrender of property in satisfaction of a secured debt; however, such cases have also recognized that such a solution is unworkable in practical terms. Absent the provision of some additional protection to the creditor, it is impossible to ensure that the creditor will receive the full amount to which it is entitled, and only that amount. Surrender of the property may satisfy the secured claim. However, if the value of the property is less than the amount of the claim, the creditor may retain an unsecured claim for the difference. If the value of the property surrendered turns out to exceed the amount of the claim, the secured creditor receives a surplus to which it is not entitled. Thus, the court in *In re Durr* rejected a plan which provided for the transfer of real property in satisfaction of a secured claim. The *Durr* court noted that a plan "proposing a payment with tangible property" must provide both for a "surplus of value" or for a "margin of allowance" to ensure that the creditor received full value, and for a means of recapturing excess value the creditor might realize on disposition of the collateral. *In re Durr*, 78 B.R. 221, 225 (Bankr.D.S.D.1987). Because the plan at issue made no such provisions, it could not be confirmed. *Id.; see also In re Indreland*, 77 B.R. 268, 274 (Bankr.D.Mont.1987) (approving plan which provided for transfer of property to secured creditor where the debtor had submitted a 5 year plan, and the creditor could return to the court for "redetermination of its claim" if it failed to realize the value of its claim on sale of the collateral).

In this case, the debtor's plan provides for neither the safeguards required by *Durr* nor the possibility of redetermination present in *Indreland*. While Section 1225(a)(5) would extinguish the Bank's claim to the extent it was secured, the unsecured portion would survive.

### III. Section 1225(a)(4)

Section 1225(a)(4) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title under such date . . .

11 U.S.C. § 1225(a)(4).

Here, all parties acknowledged that the debtor had substantial net worth. Thus, in a chapter 7 liquidation, the Bank would be paid in full. However, the Plan makes no provision for the unsecured portion of the Bank's claim. Therefore, the Plan does not meet the requirements of Section 1225(a)(4). The BAP was correct in reversing confirmation for this reason.

### IV. Section 1225(b)

Section 1225(b) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment

is due under the plan will be applied to make payments under the plan. 11 U.S.C. § 1225(b)(1).

Section 1225(b) does not provide an alternative to compliance with Section 1225(a); rather, each subsection must be satisfied independently. *In re Willingham*, 83 B.R. 552, 553 (Bankr.S.D.Ill.1988).

Here, the Plan provides for no payment to the Bank in satisfaction of its unsecured claim. It also fails to provide for any portion of the Fobians' income to be applied to payments to the Bank. Thus, the Plan fails to meet the requirements of Section 1225(b). The BAP was correct in reversing confirmation on these grounds.

## V. Award of Attorneys' Fees and Costs to the Bank

The Bank asks for an award of attorneys' fees and costs. It cites provisions in the promissory note and the deed of trust executed in relation to the loan which provide for the payment of fees and costs incurred in collection of amounts due or enforcement of rights.

### A. Costs on Appeal

Bankruptcy Rule 8014 provides, in relevant part: "Except as otherwise provided by law, agreed to by the parties or ordered by the district court or bankruptcy appellate panel, costs shall be taxed against the losing party on appeal." Bankruptcy Rule 8014. Thus, we award the Bank its costs on its appeals before the BAP and before this court.

### B. Attorneys' Fees at all levels; Costs in the Bankruptcy Court

Where a contract or statute provides for an award of attorneys' fees, a creditor may be entitled to such fees in bankruptcy proceedings. Such an award is governed by state law. *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 693 (9th Cir.1984); *Merced Production Credit Ass'n v. Sparkman (In re Sparkman)*, 703 F.2d 1097, 1099 (9th Cir.1983).

However, where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party. *Coast Trading*, 744 F.2d at 693 (refusing to award fees where creditor brought a nondischargeability action); *Grove v. Fulwiler (In re Fulwiler)*, 624 F.2d 908, 910 (9th Cir.1980) (refusing to award fees for creditor's action under Section 546); *see also Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741–42 (9th Cir. 1985) (because creditor's request for relief from the automatic stay pursuant to Section 362(d) was not an "action on the contract," debtor was not entitled to attorneys' fees for defense against the request).

Here, litigation involved solely issues of federal bankruptcy law: the Bank sought proper application of Sections 506 and 1225. This was not a traditional "action on the contract." "[T]he question of the applicability of the bankruptcy laws to particular contracts is not a question of the enforceability of a contract but rather involves a unique, separate area of federal law." *Coast Trading*, 744 F.2d at 693. Thus, we decline to award the Bank attorneys' fees for its litigation of this case at all levels, and limit the award of costs to costs incurred on appeal.

AFFIRMED.