*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: DOW CORNING CORPORATION,

　　　　　　　　　　　　　　　　*Debtor.*

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, et al.,

　　　　　　　　　*Appellants/Cross-Appellees,*

　　　*v.*

DOW CORNING CORPORATION,

　　　　　　　　*Appellee/Cross-Appellant,*

DOW CHEMICAL CORPORATION AND CORNING INCORPORATED,

　　　　　　　　　　　　　　*Appellees.*

Nos. 04-1608/1643/1720/
1721/1722

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71843—Denise Page Hood, District Judge.

Argued: July 27, 2005

Decided and Filed: July 26, 2006

Before: MOORE and COLE, Circuit Judges; WISEMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Donald S. Bernstein, DAVIS, POLK & WARDWELL, New York, New York, Glenn E. Siegel, DECHERT, New York, New York, for Appellants. David M. Bernick, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees. **ON BRIEF:** Donald S. Bernstein, Ogden N. Lewis, Michael S. Flynn, DAVIS, POLK & WARDWELL, New York, New York, Glenn E. Siegel, DECHERT, New York, New York, Sheryl L. Toby, DYKEMA GOSSETT, Detroit, Michigan, Annette W. Jarvis, Salt Lake City, Utah, Robert S. Hertzberg, PEPPER & HAMILTON, Detroit, Michigan, Andrew N. Rosenberg, PAUL, WEISS, RIFKIND, WHARTON & GARRISON, New

---

[*]The Honorable Thomas A. Wiseman, United States District Judge for the Middle District of Tennessee, sitting by designation.

1

York, New York, Patrick A. Murphy, MURPHY, WEIR & BUTLER, San Francisco, California, Stephen Blauner, MILBANK, TWEED, HADLEY & McCLOY, New York, New York, Robert M. Novick, KASOWITZ, BENSON, TORRES & FRIEDMAN, New York, New York, for Appellants. David M. Bernick, Douglas Geoffrey Smith, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge.   Numerous bankruptcy creditors of Dow Corning Corp., who collectively hold approximately $1 billion in commercial debt, argue that the bankruptcy court erred in only allowing claims for post-petition interest at the non-default contract rate, as identified in their debt contracts, rather than at the contracts' default rate.  Dow Corning argues in a cross-appeal that the bankruptcy court should have ordered the payment of post-petition interest at the non-default variable rate required by the contracts, rather than at a numerically fixed rate as of the date of the bankruptcy filing.  Finally, the creditors argue that they should be awarded their attorneys' fees, costs and expenses, since Dow Corning has always been fully solvent and is still solvent post-bankruptcy.  Because solvent-debtor cases present a situation where all parties ought to be granted the benefit of their bargains, unless the equities compel a contrary result, we **VACATE** the judgments below and **REMAND** for reconsideration consistent with this opinion.

## I. BACKGROUND

Dow Corning is a joint venture wholly owned by its two shareholders, Dow Chemical Co. and Corning Corp.  On May 15, 1995, Dow Corning filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1]   Unlike most debtors in bankruptcy, Dow Corning was fully solvent at the time it filed its bankruptcy case; it has remained so throughout the proceedings and has never disputed its ability to pay all of its creditors.  Rather, the purpose of the bankruptcy petition was to enable prompt and uniform settlement of the numerous breast-implant-related lawsuits pending against Dow Corning at the time of the petition.

During years of negotiations and settlements, Dow Corning continued its business and did not make any payments on its more than $1 billion in unsecured debt.  When a reorganization plan was finally proposed in 1999, it included provisions for payment of the principal amount of all of the unsecured debt, along with post-petition interest at the "federal judgment rate" of 6.28%, compounded annually.  The majority of the unsecured commercial debt contracts would have required a rate higher than the federal judgment rate.  Not surprisingly, the unsecured commercial debt holders (hereinafter "Class 4" or the "Class 4 creditors") voted overwhelmingly against the plan.  These creditors are the appellants in this case.

Under the Bankruptcy Code, a plan may not be confirmed by a court over the objection of a class of creditors unless, among other things, the following requirements are met:  (1) under the plan, the class would receive an amount that is equal to or greater than the amount they would receive if the debtor's assets were liquidated, *see* 11 U.S.C. § 1129(a)(7); and (2) the plan is found to be fair and equitable, *see* 11 U.S.C. § 1129(b)(1).  By incorporating the fair and equitable standard in § 1129(b) of the Code, Congress codified the "absolute priority rule," which provides that absent full

---

[1]On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 (BAPCPA), was signed into law.  Because Dow Corning's bankruptcy petition was filed before April 20, 2005, amendments to the Bankruptcy Code, and all citations to, or quotations of, specific code provisions shall refer to the Code (or particular sections of the Code) prior to its amendment by BAPCPA–i.e., 11 U.S.C. §§ 101–1330 (2000).

satisfaction of a creditor's allowed claims, no member of a class junior in priority to that creditor may receive anything at all on account of their claim or equity interest. *See Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 115 (1939). Here, the Class 4 creditors objected to the plan on two grounds. First, they argued that they were receiving less than they would have received if Dow Corning were liquidated. Second, they argued that the bankruptcy court's imposition of the federal judgment interest rate, as opposed to the rates required by the debt contracts, meant that Class 4 was not being paid the full interest it was owed, while Dow Corning's two shareholders, both in a class undisputedly junior to Class 4, were retaining millions of dollars in equity. *See In re Dow Corning Corp.*, 244 B.R. 678, 680 (Bankr. E.D. Mich. 1999).

After hearing the objections, the bankruptcy court overruled Class 4's first objection, determining that Class 4 was going to be paid at least as much as it would have received had Dow Corning's assets been liquidated. *In re Dow Corning Corp.*, 237 B.R. 380, 409 (Bankr. E.D. Mich. 1999). However, in a later opinion, the bankruptcy court agreed with Class 4 that the plan as it had previously existed was not "fair and equitable" since junior claims were being paid while Class 4's allowed claims had not been fully satisfied:

> Where the debtor is *solvent*, the bankruptcy rule is that where there is a *contractual* provision, valid under state law, providing for interest on unpaid installments of interest, the bankruptcy court will enforce the contractual provision with respect to both instalments [sic] due before and . . . after the petition was filed. . . . This rule is fair and equitable inasmuch as the solvent debtor's estate will have been enriched by the bankruptcy trustee's use of money which the debtor had promised to pay promptly to the creditor, and, correspondingly, the creditor will have been deprived of the opportunity to use the money to *his* advantage. Moreover, the rule does not in any way affect any creditor other than the claimant of interest on interest. . . .The Proponents [of the proposed plan] made only a half-hearted effort to persuade the Court that use of the statutory interest rate is fair. They directed the Court's attention to our prior decision, in which we stated in dictum that "the payment of post-petition interest at the federal judgment rate does not provide a windfall to debtors and its use cannot be seen as . . . inequitable to unsecured creditors." *Dow Corning*, 237 B.R. at 409. This statement, however, was premised on the view that a chapter 7 creditor's pre-petition contractual rights are essentially replaced by, or merged into, the allowed claim. *See Dow Corning*, 237 B.R. at 391-92, 405, 409. That is not the case with respect to a chapter 11 claim.

*In re Dow Corning Corp.*, 244 B.R. 678, 695-96 (Bankr. E.D. Mich. 1999) (emphasis in the original, some citations omitted). The court stated that it was sustaining Class 4's objections and deemed "the Plan to have been verbally amended to provide that pendency interest will be paid to Class 4 creditors in accordance with the terms of the parties' contracts." *Id.* at 696. However, this determination was made with one caveat: "In determining the applicable rate, however, no effect is to be given to contractual provisions which purport to define as a default the filing of a voluntary petition for bankruptcy relief." *Id.* Following the bankruptcy court's decision that pendency interest would be paid to Class 4 "in accordance with the terms of the parties' contracts," the plan as a whole was deemed to be "fair and equitable" to Class 4, and it was thus confirmed without a re-vote. The plan includes a choice-of-law provision indicating that New York law shall govern its interpretation.

The plan was to take effect in June 2004, and between 1999 and 2004, Dow Corning and its creditors litigated the validity of the claims that would be paid under the plan. Dow Corning objected to Class 4's claims for money due under a default rate of interest, in addition to other post-petition fees, costs, and expenses. Class 4 moved for summary judgment with regard to these claims. In April 2001, the bankruptcy court held a hearing on these objections, and ruled in favor of Dow Corning. With regard to the default interest rate, the court found that it had not initially

awarded default interest, and that Class 4 did not have an automatic right to such interest. It noted that the amended plan provided for post petition interest at "the applicable contract rate . . . in effect on May 15, 1995, the date Dow Corning's bankruptcy case commenced." The court ruled it could not award default interest given that there was no evidence that it would be fair and equitable to award additional default interest and because Dow Corning had not been in default on the date of the bankruptcy filing. With regard to post-petition fees, costs and expenses, the court found that *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan*, *Local 73*,162 F.3d 405 (6th Cir. 1998), had effectively overruled prior Sixth Circuit precedent, namely *In re Martin*, 761 F.2d 1163, 1167-68 (6th Cir. 1985), which had held that such charges are recoverable. The bankruptcy court thus granted summary judgment to Dow Corning on this issue as well.

Pursuant 28 U.S.C. § 158(a), Class 4 appealed each of these decisions to the district court. The district court determined first that the bankruptcy court's default interest decision was an interpretation of the terms of the plan, and did not effect a modification of the plan, and was thus subject to abuse-of-discretion review. *In re Dow Corning Corp.*, No. 01-CV-71843-DT, 2004 WL 764654, at *3 (E.D. Mich. March 31, 2004). The district court then found that the bankruptcy court's holding was not an abuse of discretion, noting that numerous bankruptcy courts have chosen not to award default interest even though it was provided for in underlying debt contracts. The district court upheld the bankruptcy court's determinations that the original plan had not included default interest, and that Class 4 had not established that the plan would violate §1129(b)'s fair-and-equitable standard absent payment of default interest. *Id*. at *9-10. Accordingly, the district court affirmed the decision of the bankruptcy court with regard to default interest, determining that the relevant interest rate would be "the base contract rate in effect between the parties at the time the Petition was filed, and not the default rate, unless the individual claimant can show that [Dow Corning] defaulted pre-petition." *Id*. at *10.

Next, the district court addressed the issue of attorneys' fees, costs and expenses. It disagreed with the bankruptcy court that *CPT Holdings* overruled *Martin*, but nonetheless agreed that these charges were not recoverable by the Class 4 creditors. *Id*. Relying on several Ninth Circuit cases, the district court reasoned that the Bankruptcy Code allows costs incurred in litigating the *validity* of a pre-petition contract, but does not allow costs related to recovering required contract payments in a subsequent federal bankruptcy proceeding. It thus affirmed the bankruptcy court's determination that Class 4 could not recover its fees and costs. *Id*. at *11-12.

Finally, the parties requested clarification as to the applicable "contract rate in effect at the time of the petition." Dow Corning argued that the plan called for the applicable interest rate on these instruments to vary just as it had pre-petition, as a "formulaically-fixed" rate. Class 4 argued that the bankruptcy court had set the rate to be fixed at the actual numerical value of the formula as of the date the petition was filed. After examining the bankruptcy court's written and oral opinions, as well as language used in its own prior holdings, the district court held that the bankruptcy court had intended to set a numerically-fixed interest rate and that it had not abused its discretion in doing so. The district court thus entered an order setting a fixed rate for the payment of post-petition interest, equal to the rate applicable in each debt contract on the day the petition was filed.

The Class 4 creditors timely appealed the decisions on default interest and costs,[2] and Dow Corning cross-appealed the decision with regard to the numerically-fixed rate of interest. We have jurisdiction pursuant to 28 U.S.C. § 158(d).

## II. INTEREST RATE

In its 2001 oral decision, the bankruptcy court held that Dow Corning's 1999 verbal amendment of the plan required that the applicable rate of pendency interest be the contract rate in effect between the parties at the time the petition was filed, as opposed to the default rate. Reviewing for abuse of discretion, the district court affirmed the bankruptcy court's decision and entered an order setting a fixed interest rate equal to the rate applicable to each debt contract on the day Dow Corning's petition was filed. The Class 4 creditors appeal the district court's decision insofar as it affirms the bankruptcy court's order awarding interest at the non-default rate. Dow Corning appeals the district court's decision that post-petition interest is payable at the numerically-fixed interest rate.

*1. Standard of Review*

The standard of review which we apply to the bankruptcy court's decision depends on whether that decision resulted in a modification of the amended plan, and thus was made in reliance upon or was based on an interpretation of the Bankruptcy Code, or rather simply involved the bankruptcy court's interpretation of that plan. In *In re Terex*, 984 F.2d 170 (6th Cir. 1993), we reviewed a bankruptcy court's interpretation of a reorganization plan for abuse of discretion. *Id*. at 172 (citing *In re Chicago R.R. Co.*, 961 F.2d 1260, 1264 (7th Cir. 1992) and *Barrett v. Sec'y of Health & Human Servs*., 840 F.2d 1259, 1263 (6th Cir. 1987) (standard of review in equitable actions is abuse of discretion)). "[The bankruptcy court's ruling] did not rely on or interpret the Bankruptcy Code. Its ruling, therefore, cannot be said to constitute a legal conclusion subject to de novo review." *Id*. By contrast, we noted that bankruptcy court decisions that rely on or interpret the Bankruptcy Code are subject to *de novo* review. *Id.*

Following *In re Terex*, Dow Corning argues that the bankruptcy court's decision should be reviewed for abuse of discretion, because the decision was an interpretation of the amended plan's language in exercise of that court's equitable power to award interest. The Class 4 creditors argue that the bankruptcy court's decision should be reviewed *de novo*, because they argue that its 2001 decision effectively modified the amended plan, and thus involved an interpretation of § 1129(b) of the Code. Alternatively, they argue that because, in interpreting the plan, the bankruptcy court did not exercise its equitable powers, the abuse-of-discretion standard applied in *In re Terex* should not govern. Rather, they argue, the bankruptcy court's interpretation of the plan is analogous to the interpretation of a contract, and thus should be reviewed *de novo*. *See Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 577 (6th Cir. 2006) ("Questions of contract interpretation are generally considered questions of law subject to *de novo* review." (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996))).

In *In re Terex*, we held that if a bankruptcy court's interpretation of a plan does not require interpretation of the Bankruptcy Code, review for abuse of discretion is appropriate. *In re Terex*, 984 F.2d at 172. Many of our sister circuits similarly review a bankruptcy court's interpretation of

---

[2]Appellant Bank of New York ("BNY") has filed briefs in this case separate from those of the other Class 4 creditors, primarily because BNY's debt contracts did not include a default rate or variable interest rates, and thus they are not disputing the lower courts' decisions with respect to those issues. Nonetheless, with regard to the issue of fees and costs, the majority of its arguments are effectively the same as those of the remaining creditors (all of whom filed one consolidated brief), and thus we will treat all of these arguments together, noting BNY's one separate argument at the end of the costs section.

the plan for abuse of discretion. *See In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 744 (8th Cir. 2003) ("[A] bankruptcy court's interpretation of a confirmed plan should be reviewed under the abuse of discretion standard."); *In re O'Connor*, 258 F.3d 392, 401 (5th Cir. 2001) ("[The bankruptcy court's] interpretation is entitled to deference." (citing *In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994))); *In re Weber*, 25 F.3d at 416 (reviewing a bankruptcy court's interpretation of the plan with deference). Although it is currently the law in at least one circuit that a bankruptcy court's interpretation of a plan is reviewed *de novo*, *see In re Taylor*, 243 F.3d 124, 128 (2d Cir. 2001) ("The Bankruptcy Court's interpretation of the text of the Plan, the Confirmation Order, and the Final Decree are conclusions of law reviewed de novo."), we are bound by our own precedent.

Thus, if the bankruptcy court's 2001 decision is an interpretation of the amended plan, it is entitled to deference by this Court, and we will review it for abuse of discretion. In order to determine whether the court's decision merely interpreted the plan, as opposed to modifying it, "we turn to the reasoning and language in the bankruptcy court's [2001] order." *In re Terex*, 984 F.2d at 172. The language of the bankruptcy court's 2001 decision makes clear that it was only interpreting the amended plan, not modifying it. In the bankruptcy court's view, "a straightforward application of the plan terms would mean that the creditors are entitled only to the base contract rate of interest. The creditors would therefore appear to be precluded from seeking to impose a higher rate now." The court denied the Class 4 creditors' objections on the grounds that default interest would be in conflict with the terms of the plan. "In the present case the Court does not see how one can reconcile the creditors' demand for default-rate interest with the plan's provisions for application of the interest rate in effect when Dow Corning filed its petition." This language from the bankruptcy court's opinion strongly suggests that it did not intend to modify the terms of the amended plan in its 2001 decision, but rather only interpreted it in light of the Class 4 creditors' objections. Given that the bankruptcy court's 2001 decision merely interpreted, rather than modified, the amended plan, we review its decision for abuse of discretion.

*2. Merits*

The Class 4 creditors argue that the bankruptcy court abused its discretion in two ways: (1) by incorrectly interpreting its prior language and thus effectively modifying the plan; and (2) by adopting an interpretation of the plan caused it to violate § 1129(b)'s fair-and-equitable standard.

*a. Incorrect Interpretation*

First, the Class 4 creditors argue that the bankruptcy judge incorrectly interpreted its 1999 decision. The verbally amended plan included the following clause: "[P]endency interest will be paid to Class 4 creditors in accordance with the terms of [their] contracts." *In re Dow Corning Corp.*, 244 B.R. at 696. In its 2001 oral decision, the bankruptcy court interpreted this clause to mean that pendency interest would be paid at a flat rate, fixed numerically at the rate that was in effect for each contract on the date Dow Corning filed its bankruptcy petition. The district court agreed with the bankruptcy court's decision, and read it to hold that for those contracts with a variable interest rate, the floating rate is fixed as of the date of the filing of the petition. Nonetheless, the Class 4 creditors argue that the language in the bankruptcy court's 1999 decision can only be interpreted as providing for pendency interest at the contracts' default rates.

In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993). State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations. *See id.*; *see also Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978). A term is deemed ambiguous when it is "capable of more than one reasonable interpretation." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir.

2004) (quotation omitted).  Although the interpretation of an amended plan of reorganization is analogous in many respects to the construction of a contract, we remain mindful that the law of this circuit requires that we review a bankruptcy court's interpretation of its own decisions with significant deference.  *In re Terex*, 984 F.2d at 172.

Here, the amended plan required that pendency interest, defined as "interest that accrues for the time frame beginning with the commencement of this case and ending on the effective date of the Plan," *In re Dow Corning Corp.*, 244 B.R. at  680, "be paid to Class 4 creditors in accordance with the terms of [their] contracts."  *Id.* at 696.  In its 2001 decision, the bankruptcy court found the phrase "in accordance with the terms of their contracts" to be unambiguous, and held that a straightforward application of the pendency interest clause would limit the recovery of pendency interest to "the applicable contract rate under the terms of the plan."  The bankruptcy court's interpretation defined the applicable contract rate as "the rate in effect on May 15, 1995, the date Dow Corning's bankruptcy case commenced," thus declining to allow claims for default interest, since the default rates were not in effect on May 15, 1995.

We disagree with the bankruptcy court's conclusion that the plan was unambiguous.  The phrase "at the applicable contract rate" could have any one of several other reasonable meanings, including both "at the non-default contract rate in effect on the date of the petition" and "at the varying rate provided for by the contracts should Dow fail to make a payment."  Furthermore, at the time it orally added the "at the applicable contract rate" term to the plan, the bankruptcy court purported to be *sustaining* Class 4's objections regarding the proper interest rate payable on the claims held by members of that class, lending significant weight to Class 4's argument that this term is ambiguous.

Although we disagree that the language is unambiguous, the bankruptcy court's ultimate interpretation of that language did not constitute an abuse of discretion.  The plan's language– "[e]ach allowed unsecured claim in Class 4 shall include interest thereon from the petition date through the effective date at the applicable contract rate"– is not inconsistent with the bankruptcy court's interpretation precluding default interest.  Though "the applicable contract rate" could mean several things, one reasonable interpretation of that phrase is the base applicable contract rate on the date of the petition.  And since that language is susceptible to more than one interpretation and we give significant deference to the bankruptcy court's decision, the Class 4 creditors have not met the extremely difficult burden of demonstrating on appeal that the bankruptcy court incorrectly interpreted  its own prior language or intent.  *See, e.g.*, *Terex*, 984 F.2d at 172; *see also O'Connor*, 258 F.3d at 401.  Accordingly, the bankruptcy court cannot be said to have abused its discretion by interpreting its own words incorrectly.  *See, e.g.*, *Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991) (granting "great deference" to a lower court's interpretation of its own orders).

### b. Section 1129(b)'s Fair-and-Equitable Standard

Although the bankruptcy court did not abuse its discretion by interpreting the plan as requiring the payment of pendency interest at a non-default, fixed rate, the bankruptcy court still may have done so if it construed the plan in such a way as to cause it to violate § 1129(b)'s fair and equitable requirement.  Class 4 argues that the bankruptcy court abused its discretion by interpreting the plan in such a way as to produce a result that violates that section of the Bankruptcy Code, insofar as they will not recover the full value of their claim, while Dow Corning's shareholders, whose equity interests are undisputably junior to the claims held by Class 4, will retain millions of dollars.

Although bankruptcy courts have broad equitable powers that extend to approving plans of reorganization, *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990), these equitable powers are limited by the role of the bankruptcy court, which is to "guide the division of a pie that is too small to allow each creditor to get the slice for which he originally contracted," *In re Chicago*, 791 F.2d 524, 528 (7th Cir. 1986).  Thus, a bankruptcy court's exercise of its equitable

powers is cabined by the provisions of the Bankruptcy Code. *In re Highland Superstores, Inc.*, 154 F.3d 573, 578-79 (6th Cir. 1998). Bankruptcy courts may approve a reorganization plan that "include[s] any . . . appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (quoting 11 U.S.C. § 1123(b)(6)).

When one or more class of creditors refuses to accept a plan of reorganization, as did Class 4 here, a bankruptcy court may approve the plan over the objections of the dissenting class only if two criteria are met. First, as with any plan of reorganization, all of the requirements of §1129(a) – save acceptance by each class of creditors – must be met. *See* § 1129(a)(8). Second, 11 U.S.C. § 1129(b) requires that the plan be fair and equitable. As previously explained, a plan is deemed fair and equitable as to a dissenting class of unsecured creditors only if it does not violate the absolute priority rule–i.e., the allowed value of the claims held by that class is to be paid in full, or "the holder of any claim junior to the claims of such class will not receive or retain under the plan on account of such junior claim any property." *Bank of Am. Nat'l. Trust & Sav. Ass'n v. 203 LaSalle Street P'ship*, 526 U.S. 434, 441-42 (1999) (citing § 1129(b)(2)(B)(ii)). Class 4 argues that by interpreting the amended plan as not requiring the payment of default interest, the bankruptcy court caused the amended plan to run afoul of the absolute priority rule, because Dow Corning's shareholders, undisputedly junior interest holders, will retain millions of dollars, while Class 4 claim holders will not receive the full benefit of their bargain with the debtor.

Of course, the absolute priority rule applies with equal force when the debtor is solvent, as is the case here. *Consolidated Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 527 (1941). "Whether a company is solvent or insolvent in either the equity or the bankruptcy sense, 'any arrangement of the parties by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights' of creditors 'comes within judicial denunciation.'" *Id.* (citing *Louisville Trust Co. v. Louisville, New Albany & Chicago Ry. Co.*, 174 U.S. 674, 684 (1899)). The absolute priority rule imposes somewhat different requirements when a solvent debtor seeks confirmation of its plan. The legislative history of the Bankruptcy Code makes clear that equitable considerations operate differently when the debtor is solvent: "[C]ourts have held that where an estate is solvent, in order for a plan to be fair and equitable, unsecured and undersecured creditors' claims must be paid in full, including postpetition interest, before equity holders may participate in any recovery." 140 Cong. Rec. H10,752-01, H10,768 (1994) (statement of Rep. Brooks, Chairman of the Committee on the Judiciary and co-author of the Bankruptcy Reform Act of 1994). Class 4 argues that in the context of a solvent debtor, the absolute priority rule requires the award of interest at the default rate.

Since solvent bankruptcy estates are somewhat of a rarity, it comes as no surprise that the majority of courts to consider whether to award default interest have done so in the context of an insolvent debtor. In those cases, bankruptcy courts have concluded that default interest need not be awarded in every instance for a plan to pass muster under § 1129(b)(1). Instead, bankruptcy courts analyze whether § 1129(b) requires the payment of default interest on a case-by-case basis. In *In re Casa Blanca Project Lenders, L.P.*, 196 B.R. 140, 143 (B.A.P. 9th Cir. 1996), the Ninth Circuit held that courts should apply the non-default contract rates, subject to rebuttal for equitable considerations; such a case-by-case determination allows a bankruptcy court to determine whether the circumstances of a given case warrant an application of the higher default rate. Similarly, in *In re Terry Ltd. P'ship*, 27 F.3d 241, 243 (7th Cir. 1994), the Seventh Circuit held that when the debtor is insolvent, default interest may be awarded based on the facts and equities of each specific case. *See also In re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998) (holding that in the case of an insolvent debtor, "default interest rate is generally allowed, unless the higher rate would produce an inequitable result") (internal citation omitted).

By contrast, in solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever pre-petition rights a given creditor has against the debtor. *See, e.g.*, *Chicago*, 791 F.2d at 528; *Ruskin v. Griffiths*, 269 F.2d 827, 831 (2d Cir. 1959) (holding that the equitable rules governing contests between creditors do not apply in the context of a contest between a debtor's creditor and the debtor or its stockholders). As the First Circuit has noted,

> [w]here the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid instalments of interest, the bankruptcy court will enforce the contractual provision with respect to both instalments due before and . . . after the petition was filed. . . .

*Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 269 (1st Cir. 1982). When a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties, and the role that equitable principles play in the allocation of competing interest is significantly reduced.

Based on this application of the absolute priority rule in solvent debtor cases, Class 4 argues that we should enforce their rights under the contract, including their right to interest awarded at the default rate as set forth in the terms of their contract. To do otherwise (i.e., to interpret the amended plan as not requiring the payment of default interest), they argue, would violate §1129(b)'s fair and equitable standard. We agree. Default interest rates are intended to transfer some of the risk of default from creditors to the debtor. *Chicago*, 791 F.2d at 527. By interpreting the plan as allowing interest only at the non-default rate, the bankruptcy court effectively transferred that risk back to the Class 4 creditors. Despite the equitable nature of bankruptcy proceedings, the bankruptcy judge does not have "free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." *Id.* at 528. Rather, absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights. *See Chicago*, 791 F.2d at 528 ("[I]f the bankrupt is solvent the task for the bankruptcy court is simply to enforce creditors rights according to the tenor of the contracts that created those rights.").

Dow Corning's argument that Class 4 did not meet its burden of proving that the equities of this case require the payment of default interest is unpersuasive. Courts in solvent debtor cases have overwhelmingly concluded that there is a presumption that the default interest rate should be allowed. *See Southland Corp.*, 160 F.3d at 1059-60 ("[A] default interest rate is generally allowed, unless the higher rate would produce an inequitable result." (citations omitted)); *In re Consol. Operating P'ship L.P.*, 91 B.R. 113, 116 (Bankr. D. Colo. 1988) ("When the debtor is solvent, the equities dictate that additional interest be paid to the . . . creditor rather than to the debtor."); *Ruskin*, 269 F.2d at 832 (holding that when the debtor is solvent, it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act"). We conclude, like the other courts to have considered this issue, that there is a presumption that default interest should be paid to unsecured claim holders in a solvent debtor case.

The record before us is not sufficiently developed for us to determine whether the general rule calling for the payment of default interest in solvent debtor cases, when considered with other equitable factors, makes the award of default interest appropriate in this case. We therefore remand this matter to the district court, with instructions to remand it to the bankruptcy court, for proceedings consistent with this decision, including the consideration of any equitable factors affecting the interest rate. Given our decision, Dow Corning's appeal from the bankruptcy court's order awarding interest at a non-variable rate is moot.

### III. FEES, COSTS AND EXPENSES

The bankruptcy court's 1999 decision confirming the amended plan awarded the Class 4 creditors all fees, costs and expenses to the extent that they are allowable under applicable law. In its 2001 decision, the bankruptcy court held that the law of this circuit, as set forth in *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73*, 162 F.3d 405 (6th Cir. 1999), does not allow Class 4 to recover attorneys' fees, costs and expenses, and thus denied such an award. Although the district court disagreed with the bankruptcy court's application of *CPT Holding*, it affirmed that court's decision. Applying *In re Martin*, 761 F.2d 1163 (6th Cir. 1985), the district court held that Class 4 is entitled only to attorneys' fees, costs and expenses to which they had a contractual right under state law, and which were incurred in enforcing the validity of the contracts in question. Because the fees, costs and expenses at issue were not incurred while litigating the validity of Class 4's contracts with Dow Corning, the district court concluded that Class 4 is not entitled to recover those amounts. Class 4 appeals, and argues that it is entitled to attorneys' fees, costs and expenses in accordance with the terms of the pre-petition contracts.

*1. Bankruptcy Code*

A proof of claim filed under 11 U.S.C. § 501 is deemed an allowed claim "unless a party in interest . . . objects." *See In re Welzel*, 275 F.3d 1308, 1316 (11th Cir. 2001) (citing 11 U.S.C. § 502(a)). If, as here, a party objects to a claim, § 502 requires that the bankruptcy court allow an otherwise valid claim unless one of the exceptions enumerated in subsection (b) precludes allowance. Although § 502(b)(4) excludes those attorneys' fees that exceed the reasonable value of such services, that section does not prohibit the recovery of reasonable post-petition attorneys' fees, costs and expenses.

Despite the fact that § 502 does not, on its face, prohibit the recovery of post-petition attorneys' fees, costs and expenses, Dow Corning argues that Congress intended to preclude such recovery by creditors with undersecured claims. Dow Corning points to §506(b) of the Code, entitled "Determination of secured status," which states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute under which such claim arose.

11 U.S.C. § 506(b). That section explicitly allows the holder of an oversecured claim to recover reasonable post-petition fees, costs and expenses. *See In re Hatcher*, 208 B.R. 959, 964 (B.A.P. 10th Cir. 1997) ("Under § 506(b) . . . secured creditors are entitled to post-petition attorney's fees provided that (i) the creditor is oversecured, (ii) the fees are reasonable, and (iii) the fees are provided for in the agreement between the parties."); *In re Williams*, 183 B.R. 895, 897 (D. Kan. 1995) ("This section entitles an oversecured creditor to recover reasonable attorney's fees if the recovery is expressly provided for in the security agreement.").

Dow Corning argues that § 506(b) expressly limits the recovery of such fees to creditors whose claims are oversecured, because although Congress could have made fees available to all claimants, it did not do so. In so arguing, Dow Corning invokes the statutory construction maxim *expressio unius est exclusio alterius.* "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). Thus, Dow Corning argues, because § 506(b) expressly allows only oversecured creditors to recover attorneys' fees, costs and expenses, and the Code does not similarly allow unsecured creditors to recover the charges, we should bar Class 4 from doing so

here. Consistent with Dow Corning's position, several courts have concluded that the language of § 506(b) indicates Congress's intent to disallow fees, costs, and expenses to undersecured and wholly unsecured creditors. *See In re Hedged-Inv. Assocs., Inc.*, 293 B.R. 523, 526 (Bankr. D. Colo. 2003); *In re Loewen Group Int'l, Inc.*, 274 B.R. 427, 444-45 (Bankr. D. Del. 2002); *In re Smith*, 206 B.R. 113, 115 (Bankr. D. Md. 1997); *In re Woodmere Investors Ltd. P'ship, Inc.*, 178 B.R. 346, 355-56 (Bankr. S.D.N.Y. 1995); *In re Saunders*, 130 B.R. 208, 210 (Bankr. W.D. Va. 1991); *In re Sakowitz*, 110 B.R. 268, 272 (Bankr. S.D. Tex. 1989).

The courts that deny recovery of attorneys' fees, costs, and expenses to unsecured claims rely not only on the *expressio unius* rule, but they also analogize post-petition fees, costs and expenses to post-petition interest. It is undisputed that unsecured creditors are generally prohibited from recovering post-petition interest, because claims for unmatured interest are explicitly prohibited under § 502(b). *See* 11 U.S.C. § 502(b)(2) (providing that bankruptcy courts cannot allow a claim for "unmatured interest"). Section 506(b) explicitly allows oversecured creditors to recover postpetition interests on their claims, thereby exempting them from the strictures of § 502(b) to the extent their claims are oversecured. *See* § 11 U.S.C. 506(b) ("To the extent that an allowed secured claim is secured by property the value of which . . . there shall be allowed to the holder of such claim . . . interest on such claim.").

In *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988), a case involving an insolvent debtor, the Supreme Court considered whether an undersecured creditor who sought relief from the automatic stay was entitled to receive interest on its collateral as adequate protection. The Court reasoned that because § 506 "permits post-petition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing post-petition interest." *Id*. at 372-73 (citing 11 U.S.C. § 502(b)(2)). Although the issue of whether unsecured creditors could collect attorneys' fees, costs and expenses was not before the Court, it opined that if Congress had intended undersecured creditors to receive interest as adequate protection, "surely [§ 506] is where that disposition would have been set forth." *Id*. at 373. Relying on *Timbers*, some bankruptcy courts have denied unsecured creditors attorneys' fees, costs and expenses from insolvent debtors based upon, *inter alia*, this analogy between these charges and postpetition interest. *See, e.g., Loewen Group*, 274 B.R. at 442-43; *Woodmere*, 178 B.R. at 356.

Although persuasive, the cases cited by Dow Corning and relied on by the bankruptcy court dealt exclusively with the recovery of attorneys' fees, costs and expenses from insolvent bankruptcy estates, a question not before us today. Although *Timbers* states that, as a general rule, undersecured creditors cannot recover interest on their collateral, the Court noted that in the "admittedly rare" case when the debtor proves solvent, both undersecured and wholly unsecured creditors can recover interest. *Timbers*, 484 U.S. at 379. If the analogy between the rights of the undersecured creditor to recover interest and that creditor's rights to recover fees, costs and expenses is apt, then Class 4 should be able to recover fees, costs and expenses from Dow Corning, a solvent debtor. We recognize that recovery of interest from solvent debtors is explicitly allowed by 11 U.S.C. § 726, and that no such similar provision explicitly allows the recovery of fees, costs and expenses. But the fact that Congress would expressly provide for the recovery of interest by unsecured creditors is not surprising. In the absence of such an explicit exception, an undersecured or wholly unsecured creditor would be unable to recover postpetition interest given § 502(b)'s general prohibition against the recovery of unmatured interest. *See* 11 U.S.C. § 502(b)(2). Because there is no such general prohibition against the recovery of attorneys' fees, costs and expenses contained in § 502(b), there is no need for an explicit statutory exception allowing recovery against solvent debtors.

Our decision is consistent with the decision by other courts that have considered whether unsecured creditors can collect attorneys' fees, costs and expenses from solvent debtors. *See In re United Merchs. & Mfrs., Inc.*, 674 F.2d 134, 137 (2d Cir. 1982) ("[T]he case law does not support

a distinction between secured and unsecured creditors to who seek to recover collection costs in bankruptcy."); *In re Fast*, 318 B.R. 183, 194 (Bankr. D. Colo. 2004) ("The Court is persuaded that an unsecured creditor is not, completely and unqualifiedly, precluded from asserting a claim for postpetition attorney's fees if it is provided for by contract."); *In re New Power*, 313 B.R. 496, 510 (Bankr. N.D. Ga. 2004) ("Neither § 506(b) nor the *Timbers* decision bar unsecured creditors' from asserting a contractual or statutory claim for attorneys' fees as an unsecured claim."); *In re Carter*, 220 B.R. 411, 418 (Bankr. D.N.M. 1998) ("[I]nterest is appropriately awarded to an unsecured creditor when there is a solvent debtor and there is a surplus produced by the estate. The same is true regarding attorneys fees."); *In re Cont'l Airlines Corp.*, 110 B.R. 276, 280 (Bankr. S.D. Tex. 1989) ("[C]reditors should be entitled to the recovery of attorney fees in instances where the Debtor is solvent and they would be entitled to attorney fees under state law for litigation over the validity and amount of their claim but for the filing of the bankruptcy case."); *In re Sakowitz*, 110 B.R. at 270 ("This Court is further of the opinion that attorney fees should be allowed where the Debtor is solvent (before and after the allowance) due to policy considerations akin to those with respect to the allowance of interest post-petition.").

We therefore choose to join the body of cases holding that unsecured creditors may recover their attorneys' fees, costs and expenses from the estate of a solvent debtor where they are permitted to do so by the terms of their contract and applicable non-bankruptcy law.

### 2. *Law of this Circuit*

Having determined that nothing in the Bankruptcy Code prohibits an unsecured creditor from recovering attorneys' fees, costs and expenses from a solvent debtor, we must consider whether the law of this circuit places any limitations of the extent to which creditors may recover those reimbursements to which they are contractually entitled. The Class 4 creditors argue that *In re Martin*, 761 F.2d 1163 (6th Cir. 1985) governs this action, and allows creditors to recover attorneys' fees, costs, and expenses to the full extent of their contract. In that case, a creditor filed an adversary proceeding in an effort to have its debt excepted from discharge during the course of chapter 7 personal bankruptcy proceedings. The bankruptcy court granted the exception from discharge, but refused to award the creditors costs. *Id.* at 1165. On appeal, we noted that the Bankruptcy Code explicitly awards attorneys' fees, costs and expenses to prevailing debtors, but makes no such specific allowance for prevailing creditors. *Id.* at 1168 (citing 11 U.S.C. § 523(d)). We held, however, that creditors remain entitled to attorneys' fees, costs and expenses if they have a contractual right to such fees valid under state law. *Id.*

In determining that Class 4 was not entitled to recover those attorneys's fees, costs and expenses, the district court rejected the bankruptcy court's reasoning that *In re Martin* governs the Class 4 creditor's recovery in this case, and instead relied on *CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73*, 162 F.3d 405 (6th Cir. 1999). In *CPT Holdings*, we held that a multi-employer pension plan had no "claim" as defined by 11 U.S.C. § 101(5) for withdrawal liability until an employer actually withdraws from the plan. *Id.* at 409. Because the employer in that case withdrew from the pension plan after confirmation of the employer's reorganization plan, we held that the pension plan had no claim against the employer. *Id.* The bankruptcy court reasoned, and Dow Corning now argues, that the Class 4 creditors could not recover the requested attorneys' fees, costs and expenses, because the alleged default that triggered those fees and costs did not occur pre-petition.

Although the district court correctly rejected the bankruptcy court's rationale for denying the Class 4 creditors' request for attorneys' fees, costs and expenses, we ultimately disagree with the reasoning of both courts, because neither *In re Martin* nor *CPT Holding* governs our decision. *In re Martin* is a case concerning a dischargeability action against the debtor, as opposed to a claim against the general assets of the estate, and as such, involves an entirely different set of policy

considerations. *See In re Sakowitz*, 110 B.R. at 275 ("*In re Martin* does not hold that an unsecured proof of claim (against the estate) is entitled to include attorneys' fees if the underlying contractual provisions would so allow."). We do not read *Martin* as standing for the general proposition that unsecured creditors may recover postpetition attorney fees, costs, and expenses against the estate of an insolvent debtor if the contract from which their debts arise authorizes the recovery of these charges. Just as *In re Martin* does not control our decision today, neither does *CPT Holding*. The holding of that case clarifies the scope of the definition of claim as set forth in § 101(5). *CPT Holding* has no bearing on the allowance of attorneys' fees, costs and expenses.

Despite the fact that *CPT Holdings* does not limit the Class 4 creditor's recovery of attorneys' fees, costs, and expenses, Dow Corning argues that we should follow the line of cases that limit a creditor's recovery of attorneys' fees, costs and expenses to those incurred while litigating the validity of the contract. *See Renfrow v. Draper*, 232 F.3d 688, 694 (9th Cir. 2000) (awarding attorneys' fees in bankruptcy incurred while litigating the validity and terms of a divorce decree); *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir. 1991) ("[W]here the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party."); *In re Coast Trading*, 744 F.2d 686, 693 (9th Cir. 1984) (holding that neither party is entitled to attorneys' fees in bankruptcy dispute because neither party seeks to enforce the contract); *Agassi v. Planet Hollywood Int'l, Inc.*, 269 B.R. 543, 553 (D. Del. 2001) (same); *In re Child World, Inc.*, 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993) (holding that creditor "is not entitled to attorneys' fees in connection with litigation of purely bankruptcy law issues"). The Class 4 creditors argue that they should be permitted to recover their post-petition attorneys' fees, costs and expenses to the full extent allowed under controlling state law.

In *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946), the Supreme Court stated: "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *See also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" (citations omitted)); *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Although were are mindful of the "American Rule," which generally requires that all litigants pay their own fees, parties can and do override this rule via contract. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 257 (1975) ("[T]he general rule [is] that, *absent statute or enforceable contract*, litigants pay their own attorneys' fees." (emphasis added)); *see also In re Colbert*, 185 B.R. 247, 249 (Bankr. M.D. Tenn. 1995).

Following *Vanston*, we conclude that the extent of the Class 4 creditors recovery will be governed by state law. Other Sixth Circuit cases have reached results consistent with our decision today in other bankruptcy contexts. *See Martin*, 761 F.2d at 1168 (citing *Sec. Mortgage Co. v. Powers*, 278 U.S. 149, 153-54 (1928) (relying on state law to determine whether a lien was valid in a federal bankruptcy proceeding), and *In re Bain*, 527 F.2d 681, 685 (6th Cir. 1975) (upholding a claim for fees and stating, "The validity and construction of a secured obligation to pay attorney's fees is a question of state law," without reference to whether any state law litigation occurred in bankruptcy court))); *In re Madeline Marie Nursing Homes*, 694 F.2d 433, 438 (6th Cir. 1982) (citing *Butner* for the proposition that "[u]nless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding," and stating "[w]e believe . . that the underlying principle of [numerous Sixth Circuit and Supreme Court] cases--that state law should generally be used to decide

issues regarding property interests--applies equally to contract cases, which would be governed by state law absent the bankruptcy.").

In so holding, we decline to follow the series of Ninth Circuit cases relied upon by Dow, which limit the recovery of attorneys' fees, costs and expenses to those incurred in enforcing the contract. Significantly, in several of those cases, the contract itself only provided for the recovery of attorneys' fees in that specific context.[3] *See Renfrow*, 232 F.3d at 692 n.2; *In re Fobian*, 951 F.2d at 1153. Furthermore, in *Coast Trading*, the state law under which the parties were seeking fees granted only those fees incurred by a party prevailing "on an action to enforce a contract where the contract specifically provides for attorneys' fees to be awarded." 744 F.2d at 693 (citing Or. Rev. Stat. § 20.096). Although many of the cases cited by Dow Corning are distinguishable from the case at bar, we recognize that the Ninth Circuit has squarely held that, even if provided for by contractual provisions valid under state law, creditors may never be awarded attorneys' fees expended litigating issues solely of federal bankruptcy law. *See Thrifty Oil Co. v. Bank of Am.*, 322 F.3d 1039, 1040-42 (9th Cir. 2003); *In re Baroff*, 105 F.3d 439, 440-42 (9th Cir. 1997). Relying on its previous cases, the Ninth Circuit held in *Thrifty Oil* that the prevailing party could not recover attorneys' fees because neither the validity nor enforceability of the contract was at issue. *Thrifty Oil*, 322 F.3d at 1041-42.

We do not find the reasoning of *Thrifty Oil* persuasive. In reaching its conclusion, the Ninth Circuit considered *In re Baroff*, in which that court determined that California law limits the recovery of attorneys' fees to "any action on a contract." 105 F.3d at 442-43. Similarly, in *In re Hashemi*, 104 F.3d 1122, 1126 (9th Cir. 1996), also relied upon by the *Thrifty Oil* court, the contractual provision at issue only provided for "fees incurred in enforcing its rights under the contract," and where the same California Code provision limiting the recovery of attorneys' fees to litigation involving action on the contract applied. Like *Thrifty Oil*, other cases that squarely hold that attorneys' fees are only recoverable if incurred in enforcing the underlying contract reach that conclusion based on their interpretation either of caselaw or contractual provisions that limit the recovery of fees to this narrow situation – litigation over contract enforceability. *See In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000) (citing *In re Fobian*, 951 F.2d at 1153); *Agassi*, 269 B.R. at 552 (citing *In re Fobian*, 951 F.2d at 1153, and *In re Sokolowski*, 205 F.3d at 535); *Child World, Inc.*, 161 B.R at 354-55 (citing *In re Fobian*, 951 F.2d at 1153); *In re Best Prod. Co., Inc.*, 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992) (citing *In re Fobian,* 951 F.2d at 1153).

In this circuit, an unsecured creditor may recover those costs to which it has a state-law-based right against a solvent debtor, regardless of the nature of the federal proceedings. State law may, of course, require an examination of the nature of the proceedings in federal court, but absent such state law concerns, the federal law of this circuit does not limit contractual awards of attorneys' fees to situations where the issue of contract enforceability was litigated in bankruptcy court.[4] Although arguably in tension with the Ninth Circuit, our decision is consistent with that of other courts that have awarded attorneys' fees to which a party was contractually entitled, despite the fact that the litigation did not involve enforcement of the contract itself. *See TransSouth Fin. Corp. of Florida v. Johnson*, 931 F.2d 1505, 1506-07 (11th Cir. 1991) (allowing a creditor successful in dischargeability proceedings to recover contractual attorneys' fees); *United Merch. & Mfrs.*, 674

---

[3] Dow Corning cites *In re Sokolowksi*, 205 F.3d 532, 534 (2d Cir. 2000), for the proposition that a creditor cannot recover attorneys' fees unless incurred while litigating the validity of the contract. In that case, the Second Circuit considered a debtor's request for attorneys' fees despite the lack of a contractual provision entitling the debtor to such fees. Thus, that case does not provide persuasive authority as to whether the Class 4 creditors may recover the attorneys' fees to which they are contractually entitled.

[4] Bankruptcy courts remain free, of course, to limit recovery to those attorneys' fees, costs and expenses which are *reasonable* under the circumstances.

F.2d at 139 (rejecting bankruptcy court's decision limiting creditor's recovery of collection costs to those incurred for services outside bankruptcy proceedings).

In the instant case, none of the applicable state law is before us, nor has any party or any court yet undertaken a detailed examination of the contracts at issue. Thus, we reverse the district court's determination that attorneys' fees, costs, and expenses are never allowable unless they relate to litigation of the validity of contracts under state law, and remand this case to the district court, with instructions to remand it to the bankruptcy court, for proper consideration of exactly what fee arrangements are permitted under the relevant state laws and under each contract at issue. It may well be that the relevant laws do indeed, like the California law at issue in *Baroff*, only permit fees related to contract enforcement as opposed to those incurred in any type of debt collection action, but this is simply not clear on the record before us.

## IV. CONCLUSION

For the foregoing reasons, we hereby **REVERSE** the decision of the district court, **REMAND** the case to the district court, and instruct that the district court remand this matter to the bankruptcy court for proceedings consistent with this opinion.